1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LISA DAVIS,

        Plaintiff,

    v.

SOCIAL SERVICE COORDINATORS, INC., et al.,

        Defendants.

_____/

CASE NO. 1:10-cv-02372-LJO-SKO

**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION BE GRANTED**

**(Docs. 47, 69 )**

**OBJECTIONS DUE:  7 DAYS**

## I.   INTRODUCTION

Plaintiff Lisa Davis ("Plaintiff") filed suit against Social Service Coordinators, Inc. and Social Services Coordinators, LLC (collectively "SSC") on December 20, 2010, alleging, *inter alia*, that SSC failed to pay overtime wages in violation of the Fair Labor and Standards Act ("FLSA"), codified at 29 U.S.C. § 201, et seq.  Following several motions, a Second Amended Complaint ("SAC") was filed on August 11, 2011, which is the operative complaint.[1]  (Doc. 27.)

---

[1] SSC filed a motion to dismiss Plaintiff's First Amended Complaint on February 8, 2011; SSC filed a motion to strike Plaintiff's Second Amended Complaint on March 30, 2011; Plaintiff filed a Motion to Amend her First Amended Complaint on April 20, 2011.  (*See* Docs. 11, 16, 18.)

On April 30, 2012, Plaintiff filed a motion to conditionally certify a collective action pursuant to the FLSA. (Doc. 47.)  On May 31, 2012, an opposition was filed by SSC. (Doc. 51.)  Plaintiff filed a reply brief on June 15, 2012.  (Doc. 59.)  On July 18, 2012, the parties appeared telephonically for a hearing before U.S. Magistrate Judge Sheila K. Oberto. (Doc. 66.)  Craig M. Nicholas, Esq., appeared on behalf of Plaintiff and Christian C. Antkowiak, Esq., appeared on behalf of SSC. (Doc. 66.)

On August 28, 2012, Findings and Recommendations were issued that Plaintiff's motion for conditional class certification be denied without prejudice. (Doc. 68.)  The undersigned permitted Plaintiff to supplement the motion for conditional class certification within the objection period, and on September 17, 2012, Plaintiff filed a supplemental motion seeking conditional class certification. (Doc. 69.)  The August 28, 2012, Findings and Recommendations were withdrawn on September 18, 2012, and SSC was provided an opportunity to oppose Plaintiff's supplemental motion.  SSC filed an opposition on September 28, 2012, and Plaintiff filed a reply to SSC's opposition on October 5, 2012.

After considering Plaintiff's motion for conditional class certification (Doc. 47) as well as Plaintiff's supplemental motion which narrowed the proposed class, the Court RECOMMENDS that Plaintiff's motion for conditional certification of a collective action be GRANTED and that NOTICE BE ISSUED TO THE CLASS.

## II.    BACKGROUND

SSC[2] is a private social service organization that contacts Medicare and Medicaid beneficiaries across the nation seeking to qualify these beneficiaries for particular benefit programs geared toward low-income applicants.  (SAC, Doc. 27, ¶ 6.)  Plaintiff worked as a remote case manager for SSC from August 23, 2010, through November 25, 2010.  (SAC, Doc. 27, ¶ 11.)  As a remote case manager, Plaintiff's principal and primary job duties included making telephone calls

---

[2] Social Service Coordinators, LLC was originally Social Service Coordinators, Inc.  However, SSC changed corporate forms on December 28, 2010.  (SAC, Doc. 27, ¶ 8.)  Thus, both entities have been listed as defendants, but Plaintiff alleges they are one in the same, and SSC does not challenge this assertion.  (SAC, Doc. 27, ¶ 8.)  Thus, references to "SSC" encompass both Social Service Coordinators, LLC and Social Service Coordinators, Inc. for purposes of these findings and recommendations.

to predetermined senior citizens within particular Medicare plans from a list provided by SSC. (SAC, Doc. 27, ¶ 12.)  Plaintiff was required and expected to interview and qualify the senior citizens, pursuant to SSC's strict guidelines and scripts, for a particular Medicare plan.  (SAC, Doc. 27, ¶ 12.)  Plaintiff's work as a remote case manager was to make, on a daily basis, quota-based telephone calls in accordance with the management decisions and business policies established by SSC. (SAC, Doc. 27, ¶ 12.)  Plaintiff was also required to process the applications for the applicable benefits program. (SAC, Doc. 27, ¶ 13.)  Plaintiff alleges her position as remote case manager was incorrectly classified by SSC as "exempt."  (SAC, Doc. 27, ¶¶ 12, 13.)

According to Plaintiff, SSC employs a "fleet of employees" like Plaintiff in "intake/outreach employee positions" which are all mis-classified as exempt.  (SAC, Doc. 27, ¶ 7.)  Plaintiff alleges that SSC intentionally and deliberately created a number of job titles "to create the superficial appearance of a number of unique jobs, when in fact, these jobs are substantially similar and can be easily grouped together for the purpose of determining whether they were all misclassified." (SAC, Doc. 27, ¶ 7.)  Plaintiff alleges that, because of this mis-classification, SSC has refused to pay these employees overtime compensation and other benefits required by law.  (SAC, Doc. 27, ¶ 1.)

### III.    PROCEDURAL HISTORY

**B.    The Parties' Arguments**

**1.    Plaintiff's Motion for Conditional Class Certification**

The FLSA provides that a non-exempt employee who works in excess of forty hours in one week shall be paid "not less than one and one-half times the regular rate of pay at which he is employed." 20 U.S.C. § 207(a)(1).  Plaintiff's complaint alleges SSC intentionally and wilfully mis-classified certain positions in the company as "exempt."  Plaintiff contends that her position, and positions like hers, should have been classified as "non-exempt" and, as a result, SSC should have paid her overtime under Section 207(a)(1).

Although SSC has many departments and divisions, at issue here are employees who work in two sub-divisions of the Operations and Outreach division: the "Intake and GT" sub-division and

the "Medicare Outreach" sub-division.  (Doc. 52, 7:7-13.)[3]  Plaintiff contends that the proposed

collective class members share in common that they are non-executive employees working within

these sub-divisions, who were classified by SSC as "exempt" from overtime pay. (Doc. 52, 7:13-15.)

Plaintiff wishes to conditionally certify "outreach" and "intake" employees "who essentially were

telemarketers working in one of these two sub-divisions."  (Doc. 52, 7:15-18.)

Plaintiff claims that the individuals in these sub-divisions can be easily grouped together for

purposes of determining whether they were mis-classified because the jobs in the sub-divisions

involved substantially similar duties, regardless of job title.  Plaintiff asserts that employees in these

sub-divisions "sat in front of a computer, and often wore a telephone headset.  These employees'

primary job duties and responsibilities were, and continue to be, uniform:  performing intake and

outreach services to SSC's members . . . .  Intake/outreach employees spent their day making

outbound telephone calls to pre-determined or pre-qualified clients regarding their potential

participation in medicare plans or programs."  (Doc. 52, 10:14-21.)  Plaintiff maintains that all of

SSC's "intake/outreach" employees would adhere to the written scripts provided by SSC, and "spent

the vast majority of their workday on the phone conducting outreach, via-telephone calls, to potential

applicants." (Doc. 52, 11:28-12:1; 12:13-14.)  The remainder of these outreach employees' day was

spent filling out forms, entering information into SSC's database, and ensuring that the proper

materials were mailed to the medicare program applicant.

Plaintiff claims that SSC maintained quotas regarding the status of each case that employees

in the two sub-divisions handled, and categorized each case as "in progress," "pending," and

"approved."  (Doc. 52, 12:24.)   The quotas dictated a specific amount of time per day that

intake/outreach employees were to spend following-up and working on "in progress" cases, including

via outbound calls. (Doc. 52, 12:25-26.)  The quotas were extremely high and virtually impossible

---

[3] Plaintiff's motion was originally filed at docket number 47, but it contained several redactions due to a pending motion to seal.  Plaintiff's motion to seal was granted in part, and a second copy of the motion was filed at docket number 52, containing redactions commensurate with the Court's order on Plaintiff's motion to seal.  It is the second version of Plaintiff's memorandum of points and authorities filed at docket number 52 that the Court will reference for purposes of the motion.  An un-redacted version of Plaintiff's memorandum is filed under seal at docket number 55.

References to page numbers of the parties' briefs or other documents in the record reflect citation to the CM/ECF pagination at the top of the filed documents.

to achieve without working overtime. (Doc. 52, 13:10-11.) All the SSC intake/outreach employees were under constant supervision by management. (Doc. 52, 13:16.) According to Plaintiff, in performing their job duties, SSC intake/outreach employees did not use any independent discretion, judgment, or make management decisions with respect to matters of significance. "Each of those job categories [was] under close supervision by a SSC manager, performed outreach services, made calls from a per-determined list, operated according to SSC's written scripts and guidelines, and had to meet quotas." (Doc. 52, 13:21-23.)

Plaintiff contends that she is similarly situated with the rest of the proposed class because (1) everyone was designated as exempt; and (2) all the conditional class members worked over 40 hours, but were never paid overtime. Although Plaintiff asserts that these facts alone support conditional class certification, (Doc. 52, 19:3-13), Plaintiff provides more by presenting some evidence that the prospective class members share similar job duties. (Doc. 52, 19:17-21:2.) Plaintiff claims that members of the two sub-divisions share an essential function: they "regularly reach out to SSC clients/customers to gather information and/or then filling-out/submitting a predetermined set of forms related to government-sponsored programs." (Doc. 52, 20:5-8.) Plaintiff asserts that sub-division membership is the "glue that binds everyone in this conditional class and makes collective treatment particularly appropriate." (Doc. 52, 20:8-9.) In short, all of the members of the proposed class were part of the process of making contact with pre-determined clients/members, and then filing out and "pushing through" the various forms mandated by SSC's process.

Plaintiff also contends that the class is similarly situated because all class members were strictly controlled and regulated by SSC through statutory requirements, lists, scripts, checklists, training materials, and strict quotas. (Doc. 52, 21:6-13.)

### 2. SSC's Opposition to Plaintiff's Motion for Conditional Certification

SSC argues that Plaintiff has not filed an opt-in consent for purposes of initiating a collective action pursuant to 29 U.S.C. § 216(b), and thus the action has not been properly commenced and the motion cannot be granted as a procedural matter. (Doc. 51, p. 7-8.) SSC next argues that Plaintiff's

proposed class, drawn based on SSC's grouping of certain positions in two sub-divisions of the company, is so broad and generic that it "precludes a meaningful analysis of 'who' is alleged similarly situated to Plaintiff." (Doc. 51, p. 9.) SSC asserts that Plaintiff fails to show how different job titles within the sub-divisions have the same duties and together these employees were the victims of an improper single decision, policy or plan. (Doc. 51, p. 10.) Further, the fact that job titles are organized by sub-divisions does not mean that every position within a particular sub-division requires the same primary duties.

SSC also contends that, even to the extent that Plaintiff has adequately identified job titles and duties within the sub-divisions, the evidence offered does not show that there is a similarity between the job duties of the putative class. (Doc. 51, p. 11-19.) SSC notes that no other individual of the proposed class has filed a consent to opt-in to this case, which the Court should consider at this stage. (Doc. 51, p. 11-12.) SSC argues that the declarations Plaintiff submitted in support of the motion are nearly identical and speculative in nature, contain boilerplate and legal conclusions, and often discuss matters as to which the declarants have no firsthand knowledge. (Doc. 51, p. 12-13.) Further, Plaintiff improperly attempts to rely upon membership in company sub-divisions to establish that she and others are similarly situated; however, membership in a sub-division is not a "job function." (Doc. 51, p. 14.) Plaintiff offers no meaningful analysis of the specific job duties and titles within the two relevant divisions. (Doc. 51, p. 15.) The job descriptions of positions within the sub-divisions are different, and Plaintiff's discussion of the various positions exemplifies the lack of similarities in the job duties among employees in these divisions. (Doc. 51, p. 15-16.)

According to SSC, although Plaintiff argues that every employee in the proposed class used the same training materials as evidenced by Plaintiff's submission of some of SSC's training materials, there is no showing that the entire putative class across the two sub-divisions received and used the same training materials, attended the same trainings, or was governed by the same quotas. Instead, Plaintiff simply asserts that it is true. (Doc. 51, p. 17 ("There is no evidence as to *who* these materials and trainings may have applied, *when* they applied, and *how* they applied or *who* provided them.").) Even the declarants who stated that SSC maintained quotas for outbound calls are "non-committal" as to whether everyone had the *same* quotas. (Doc. 51, p. 17-18.)

SSC further contends that Plaintiff has also failed to identify a company-wide policy or decision common to all the putative class members.  The mere fact that Plaintiff alleges that these employees were mis-classified is not sufficient to establish a company-wide policy or decision common to all.  (Doc. 51, p. 19-21.)   Additionally, SSC asserts that there are too many individualized issues among class members for a collective action to be maintained.  For example, SSC intends to assert an administrative exemption defense with respect to Remote Case Managers. (Doc. 51, p. 21.)  This exemption requires a highly individualized factual inquiry that will not be common to every class member.  As it relates to every employee in these sub-divisions, collective treatment is "even less plausible."  (Doc. 51, p. 22.)

Finally, SSC contends that, even to the extent the Court authorizes notice, the parties should negotiate the terms of the notice proposed by Plaintiff.  Specifically, SSC asserts that the notice fails to address several issues that need to be resolved, including how Plaintiff's counsel will maintain the confidentiality of the putative plaintiffs' contact information, (Doc. 51, p. 25), and the parties should also meet and confer regarding the length of the notice period.  (Doc. 51, p. 26-27.)

### 3.    Plaintiff's Reply

Plaintiff contends that SSC ignores the lenient standard that is applicable at this notice-stage of the proceedings, as indicated by SSC's repeated statements that Plaintiff's evidence does not constitute "substantial evidence."   Plaintiff notes that the standard at the notice-stage of the proceedings requires only allegations and "some" evidence.  (Doc. 59, 6:22-24.)

Plaintiff asserts that she filed an express consent to suit with her original complaint and each of her amended complaints; thus, SSC is mistaken in its argument that the suit has not been properly commenced. (Doc. 59, 7:11, n. 3.)  As to the proposed class, in light of an affidavit from SSC's Human Resource Director that all positions within the Intake and GT sub-division are "non-exempt" (Doc. 51-1, ¶ 18), Plaintiff narrows her proposed class to the following group:

> All current and former SSC employees working in the "Medicare Outreach" sub-division, who worked overtime, but were not classified as exempt, excluding anyone with the title of President, Vice President, Director, Supervisor, or Team Lead.

(Doc. 59, 16:14-16.)

Plaintiff maintains that all the employees within the Medicare Outreach sub-division have similar, even if not identical, primary duties. The proposed class members worked in a "cubical city call-center" making hundreds of calls to elderly applicants a day, "pushed and filled out forms provided by SSC, and operated according to strict training, quotas, scripts, and checklists." (Doc. 59, 5:10-13.) Putative class members who did not work in "cubicle city" had positions with the "exact duties," but they worked from home or "remotely" by logging into the same computer system as putative class members in the Florida call center, and used the same scripts, checklists, training, and federal and state eligibility criteria. (Doc. 59, 5:13-16.)

Other putative class members worked in the "field" doing the "exact same thing as their cubicle-bound counterparts," but they visited the elderly clients in person. (Doc. 59, 5:16-18.) These putative class members worked as "Field Coordinators" and did "just what everyone else did, but instead of using the telephone to market SSC's services and complete the rigid tasks, they used their cars and feet to reach elderly clients who were not as comfortable using the phone or internet." (Doc. 59, 5:18-20.) Further, Field Coordinators all used the same caller/client lists, scripts, quotas, checklists, training protocols, and eligibility criteria. (Doc. 59:11:15-17.) Thus, Plaintiff maintains that she has more than met the lenient standard required for notice of the collective action.

Finally, Plaintiff contends that SSC's arguments with regard to the notice to the class are "largely inappropriate attempts to limit participation by potential plaintiffs and to hinder plaintiffs' counsel's efforts to investigate the case on behalf of Ms. Davis." (Doc. 59, 17:1-11.)

**4.     The Withdrawn August 28, 2012, Findings and Recommendations**

On August 28, 2012, the Court issued Findings and Recommendations ("F&Rs") that Plaintiff's motion for conditional class certification be denied without prejudice. (Doc. 68.) In response to SSC's opposition, Plaintiff further narrowed the proposed class in the reply brief and sought certification of the following class:

> All current and former SSC employees working in the "Medicare Outreach" sub-division, who worked overtime, but were classified as exempt, excluding anyone with the title of President, Vice President, Director, Supervisor, or Team Lead.

The Court found that the class definition was too broad because it included employees within the Medicare Outreach sub-division who did not perform the same primary duties as others within

the sub-division.  Specifically, the F&Rs noted that the primary job duties of those in the "Case Reviewer" position were different from the other positions in that sub-division identified by Plaintiff. The Case Reviewer's duties do not require any contact with clients, whereas every other job description included an essential responsibility that involved client contact and adherence to a script for interactions with the clients.  Furthermore, unlike the other positions, Case Reviewers were not required to maintain production goals or quotas, as is required for the other positions within the Medicare Outreach sub-division.  The Court concluded that, to the extent the proposed class includes Case Reviewers, it was too broad.  (Doc. 68, 24:17-18.)  The Court also noted that certification as to a slightly narrowed class was not precluded:

> While the Court finds that Plaintiff's proposed class is over-broad, Plaintiff has offered more than some evidence that employees within the Medicare Outreach [sub-division] who performed client/member outreach are similarly situated.  As set forth below, none of SSC's arguments would preclude certification as to a slightly narrowed class, and Plaintiff should be provided an opportunity to renew the motion and re-shape the class definition to exclude from the group dissimilar positions such as that of Case Reviewers.

(Doc. 68, 24:20-25.)

### 5.   Plaintiff's Supplemental Motion for Conditional Class Certification

In responding to the Court's concerns regarding the proposed class, Plaintiff filed a supplemental motion on September 17, 2012, that requested certification of the following class:

> All current and former SSC employees **who at any time** worked in the "Medicare Outreach" sub-division, **performing client/member outreach duties**, who worked overtime, but were classified as exempt, excluding anyone who worked exclusively as a President, Vice President, Director, Supervisor, Team Lead, or **Case Reviewer**.[4]

Plaintiff asserts that this proposed class definition adequately addresses the Court's concerns in the F&Rs that the proposed class was overbroad because it potentially included employees, such as case reviewers, who did not spend time contacting SSC's clients/members.  Plaintiff contends that her proposed class has now been tailored to certify only one sub-division (Medicare Outreach) of SSC's Operations and Outreach division, and the class definition has been tailored to only those

---

[4] The bolded portions of the proposed class reflect the changes made by Plaintiff in proposing a reshaped class in her supplemental motion.  (Doc. 69, 3:7-9.)

employees within that sub-division who had duties related to "client/member outreach." (Doc. 69, 5:19-23.)

### 6.    SSC's Opposition to Plaintiff's Supplemental Motion

SSC maintains that Plaintiff's class proposed in her supplemental motion is still too broad and fails to properly address the concerns raised in the F&Rs. (Doc. 71, p. 2-4.) Specifically, Defendant argues that, rather than limiting the proposed class to individuals who held similar positions, Plaintiff attempts "an artificial carve out of her deficient class definition by merely excluding individuals who worked 'exclusively' as Case Reviewers while including anyone that performed 'outreach duties' at any time." (Doc. 71, p. 3.) SSC asserts that, under this class definition, if an individual who worked as a Case Reviewer for the last ten years had, prior to that, performed "outreach duties," such an individual would be included in the class. (Doc. 71, p. 3.) Also included in this proposed class "would be an individual who rarely performed 'outreach duties' despite the fact that such person's primary duty did not include any 'outreach duties.'" (Doc. 71, p. 3.)

SSC also asserts that Plaintiff's proposed class "does not even attempt to define what specifically would qualify as an 'outreach duty' making it almost impossible to determine who is and is not in Plaintiff's proposed class." (Doc. 71, p. 4.) For example, while the "essential responsibilities" of a Case Manager include, among other things, "conducting telephonic outreach activities, meeting quality standards by ensuring proper phone etiquette, adhering to scripts, meeting daily, weekly, and monthly production goals, and adhering to strict compliance of all aspects of SSC's outreach operations, . . . it is unclear whether someone who performed only one of these duties 'at any time' would be included in Plaintiff's proposed class." (Doc. 71, p. 4.)

SSC also contends that Plaintiff's proposed class fails to identify a proper time-frame. (Doc. 71, p. 4-5.) Despite the clear statute of limitations, SSC contends that Plaintiff's proposed class creates no time limitations on (1) when the putative class member performed "outreach services"; (2) when they worked in the Medicare Outreach sub-division; (3) when they worked overtime; (4) when they worked exclusively as a President, Vice-President, Director, Supervisor, Team Lead, or Case Reviewer; or (5) when they were employed by SSC.

Finally, SSC maintains its original objections to Plaintiff's proposed notice, and renews its opposition because, among other things, Plaintiff's proposed notice fails to account for the corresponding changes made to the class definition in the supplemental motion.  SSC requests that, to the extent Plaintiff's motion is granted, the Court refuse to issue Plaintiff's proposed notice and require the parties to meet and confer regarding the proposed notice.

### 7.   Plaintiff's Reply to SSC's Opposition to the Supplemental Motion

Plaintiff first contends that, as it pertains to SSC's argument that the proposed class contains no express time limitations, this does not preclude notice at this stage.  The originally proposed notice was limited to include only those employees who worked at any time within the three-year period prior to the complaint being filed, i.e., December 20, 2007.  Moreover, Plaintiff objects to SSC's request for a "time-consuming and vague 'meet and confer' period regarding the notice," particularly because SSC raises only three issues:  confidentiality of the contact information, the length of the notice period, and an alleged discrepancy between what is described in the proposed notice and the re-shaped class definition.  As to confidentiality, Plaintiff asserts there is a protective order in place in this case.[5]  The contact information for class members should be provided pursuant to the protective order.

Second, as it pertains Plaintiff's proposed 90-day notice period, this is within the range of notice that courts have approved – despite that SSC seeks a shorter notice period of 30 days.  Finally, as it pertains to tailoring the notice to match the re-shaped definition proposed by Plaintiff in the supplemental motion, Plaintiff asserts that she could track the language in the proposed notice with the class definition approved by the Court, which addresses any concerns of SSC.

## IV.   DISCUSSION

### A.   Legal Standard

Under the FLSA, complaining employees may bring a collective action on behalf of themselves and all others "similarly situated."  29 U.S.C. § 216(b) (2012).  Plaintiffs must

---

[5] The protective order Plaintiff references was agreed to by the parties, but was not signed by the Court due to deficiencies set forth by order on January 25, 2012.  (Doc. 40.)  The parties' stipulated protective "order" is not court-ordered; the stipulation filed is only a private confidentiality agreement among the parties.

affirmatively "opt-in" by filing a written consent with the court, but are not subject to the more stringent requirements of class actions pursuant to Fed. R. Civ. P. 23. *See id.*; *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal 2009). The FLSA does not define "similarly situated," and there are several different approaches to interpreting the term. District courts in the Ninth Circuit have adopted an *ad hoc*, two-tiered approach to determine whether plaintiffs are "similarly situated." *See Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 n.3 (E.D. Cal. 2009) (collecting cases).

The first tier is the "notice" stage, when the court determines whether plaintiffs are sufficiently similarly situated that the collective action should be certified for the purpose of sending notice to potential class members. *Id.* at 627; *Gerlach v. Wells Fargo & Co.*, No. C 05-0585, 2006 WL 824652, at *2 (N.D. Cal. Mar. 28, 2006). This threshold determination "requires little more than substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Gerlach*, 2006 WL 824652, at *2 (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (11th Cir. 2001)). The standard is a lenient one, typically resulting in a "conditional certification" of the representative class which may be revisited at the second stage. *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal 2002) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)).

The second stage occurs at the conclusion of discovery, usually on a defendant's motion for decertification, and applies a stricter standard for "similarly situated." *Gerlach*, 2006 WL 824652, at *2. Factors considered at the second stage include "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Leuthold v. Destination Am.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004).

**B.    Proposed Class Definition**

After twice narrowing the proposed class, Plaintiff seeks to conditionally certify the following FLSA class:

> All current and former SSC employees who at any time worked in the "Medicare Outreach" sub-division, performing client/member outreach duties, who worked

1    overtime, but were classified as exempt, excluding anyone who worked exclusively
2    as President, Vice President, Director, Supervisor, Team Lead, or Case Reviewer.

3    (Doc. 69, 3:7-9.)  Due to changes in the proposed class during the pendency of Plaintiff's motion (in

4    response both to SSC's opposition and concerns stated in the August 28, 2012, F&Rs), some of the

5    arguments offered in opposition and in favor of Plaintiff's motion for class certification have become

6    moot.  For example, because Plaintiff has eliminated any employees from SSC's "Intake and GT"

7    sub-division from the proposed class, SSC's argument that Plaintiff's class is overbroad because it

8    includes those employees is no longer relevant.  Likewise, Plaintiff's assertion that all employees in

9    the "Intake and GT" sub-division are similarly situated to those employees in the "Medicare

10   Outreach" sub-division is not relevant.  Although some issues have been mooted by changes made

11   to the proposed class, in issuing the following Findings and Recommendations the undersigned has

12   thoroughly reviewed and considered *all* of the parties' briefs and supporting documentation,

13   including that documentation filed under seal and arguments offered during the July 18, 2012,

14   hearing.  (*See* Docs. 47, 51, 52, 53, 54, 59, 60, 63, 69, 70, 71).  Some of the discussion below restates

15   the Court's earlier August 28, 2012, findings, as Plaintiff's supplemental motion has not affected

16   consideration of these issues.

17   **C.     The Parties' Objections to Affidavits and Argument**

18        **1.     Plaintiff's Evidentiary Objections Should be OVERRULED**

19        In conjunction with her original reply brief, Plaintiff filed objections to the affidavits of

20   Cristina Pinckney ("Pinckney Aff.") (Doc. 51-1, Exh. A) and Minette Gomez ("Gomez Aff.") (Doc.

21   51-2, Exh. B) filed in support of SSC's opposition to Plaintiff's motion.  (Doc. 59-1.)  There are

22   divergent opinions within the district courts regarding whether evidence submitted in support of or

23   in opposition to a conditional class certification motion must be in a form admissible at trial.

24   *Compare Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005) ("[O]nly

25   admissible evidence may be considered in connection with a [Section] 216(b) motion.") *with White*

26   *v. MPW Industrial Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006) (finding that hearsay

27   evidence may properly be considered in the context of a motion for conditional class certification

28   under Section 216(b)); *Aguayo v. Oldenkamp Trucking*, No. 04-6279-AWI-LJO, 2005 WL 2436447,

at * 4 (E.D. Cal. Oct. 3, 2005) (disregarding hearsay and foundational challenges to declarations submitted in support of motion for conditional certification).

There are several reasons why the evidentiary standards should be relaxed at this stage of the proceedings, and Plaintiff's evidentiary objections should be disregarded.  First, this is a non-dispositive motion, and unlike a Rule 56 motion for summary judgment, there is no express requirement that the evidence considered be admissible for purposes of trial.  Second, by considering evidence at this stage, the Court is not making any binding determination as to the admissibility of evidence for purposes of trial. Many courts have relaxed the evidentiary requirements for plaintiffs at the conditional certification stage because the evidence has not been fully developed through discovery and the evidence will be subjected to greater scrutiny at the second stage.  Indeed, Plaintiff's declarations suffer similar foundational issues raised by SSC that are addressed below. As the Court recommends that the evidentiary standards be relaxed with respect to Plaintiff's declarations, SSC's testimonial evidence will be viewed similarly.

Regarding Plaintiff's objection that Minette Gomez's statements lack foundation and contain inadmissible hearsay, the matters addressed in Ms. Gomez' affidavit do not pertain to the substance of Plaintiff's motion for conditional certification, but rather to contact Plaintiff's counsel had with a former employee of SSC and whether it involved a solicitation to join this lawsuit.  At best, these statements are only relevant to an issue SSC raised in a footnote regarding the appropriate length of the notice period.

For these reasons, Plaintiff's evidentiary objections to the affidavits of Cristina Pinckney and Minette Gomez should be OVERRULED.

### 2.      SSC's Motion to Strike Portions of Plaintiff's Reply Brief Should be DENIED

After Plaintiff filed her original reply brief (Doc. 59), SSC filed a motion to strike certain portions of Plaintiff's brief. (Doc. 60.)  SSC takes issue with Plaintiff's argument that SSC made a concession about similarities of the class by not offering evidence to "engage" Plaintiff's evidence (Doc. 60-1, ¶ 1.); SSC argues that Plaintiff unfairly characterizes SSC as having committed "discovery misconduct." (Doc. 60-1, ¶ 2.)  Finally, SSC asserts that Plaintiff's brief cites *Coyler v. SSC Disability Servs.*, No. 11-20984-CIV, 2012 WL 882500 (S.D. Fla. Mar. 14, 2012), and contends

that Plaintiff misrepresents that this case involved SSC when in fact it involved "SSC Disability Services, LLC," a separate company (Doc. 60-1, ¶ 3).

As it relates to Plaintiff's statements in the reply brief as to whether SSC "conceded" arguments related to the putative class' uniform training and use of the same training materials, this is a disputed issue.  It is not appropriate to strike the matter from Plaintiff's reply brief simply because SSC disagrees with Plaintiff's argument.  The motion to strike in this regard was nothing more than a sur-reply filed without leave of court.  SSC's motion to strike lines 1 through 13 on page 12 of Plaintiff's reply brief should be DENIED.

Regarding Plaintiff's representation that SSC committed "discovery misconduct," the Court is well aware of the discovery disputes between the parties, particularly since the undersigned assisted the parties informally in resolving one of their disputes.  The discovery in this case was bifurcated on a class certification/merits basis, and the parties disputed the scope of the initial discovery.

A review of the parties' briefs reveals that the parties still contest the scope of the initial pre-certification discovery – SSC appears to maintain that Plaintiff was unfairly fishing in discovery and Plaintiff asserts that SSC was improperly blocking her attempts to obtain class discovery.  Plaintiff is entitled to her opinion about SSC's discovery conduct, and the Court is capable of assessing the parties' discovery conduct.  Although SSC's desire to respond to Plaintiff's argument may be understandable, it does not provide a basis to strike Plaintiff's reference to "discovery misconduct" in her reply brief.  SSC's motion to strike footnote 6 on page 8 of Plaintiff's reply brief should be DENIED.

Finally, with respect to Plaintiff's citation to *Colyer v. SSC Disability Servs., LLC*, No. 11-20984-CIV, 2012 WL 882500 (S.D. Fla. Mar. 14, 2012), there is no need to strike Plaintiff's discussion of the case on the ground that Plaintiff has mis-characterized the facts and allegedly draws improper comparisons to the matters before this Court.  The Court can independently decide whether Plaintiff's view of the case is persuasive and whether the case has been fairly and accurately characterized.

1    As SSC's objections to Plaintiff's reply brief do not provide a basis to strike any portion of

2  the brief, the objections should be OVERRULED and the motion should be DENIED.

3  **D.    The Proposed Class is Similarly Situated**

4    The parties do not dispute that Plaintiff's motion is one for conditional class certification, and

5  that the more lenient first-stage notice standard applies.  The notice standard requires plaintiffs to

6  provide "substantial allegations, supported by declarations or discovery, that 'the putative class

7  members were together the victims of a single decision, policy, or plan.'"  *Gerlach*, 2006 WL

8  824652, at *3-4 (N.D. Cal. Mar. 28, 2006).  In mis-classification cases, courts generally require

9  plaintiffs "to provide some further allegation or evidence indicating that prospective class members

10  share similar job duties." *Kress*, 263 F.R.D. at 629-30.  This is so because whether employees are

11  entitled to overtime compensation under the FLSA depends on an individual, fact-specific analysis

12  of each employee's job responsibilities under the relevant statutory exemption criteria.  *Holt v. Rite*

13  *Aid Corp*., 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004) (quoting *Morisky v. Public Serv. Elec. &*

14  *Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000)).  Thus, a collective action can only be maintained

15  where the class is similarly situated and was subject to a common policy or plan in a way that turns

16  individual factual inquiries into an issue that is common to the entire class and can be resolved with

17  common evidence.  *See Aquirre v. SBC Comm's Inc.*, No. CIV. A. H-05-3198, 2006 WL 964554,

18  at *12 (S.D. Tex. Apr. 11, 2006) (holding that to determine whether employees are similarly situated

19  in a mis-classification case, the court must consider employees' duties, amount of time spent on those

20  duties, and the extent of the discretion exercised).

21    Here, Plaintiff asserts that SSC violated the FLSA by mis-classifying its employees in the

22  Medicare Outreach sub-division as "exempt" and failing to pay those employees overtime.  Plaintiff's

23  theory is that she and all proposed class members "did not utilize any independent discretion,

24  judgment, or management decisions with respect to matters of significance. [] Each of those job

25  categories were under close supervision by a SSC manager, performed outreach services, made calls

26  from a pre-determined list, operating according to SSC's written scripts and guidelines, and had to

27  meet quotas."  (Doc. 52, 13:19-23.)  As discussed by the court in *Kress*, the question at issue for

28  purposes of conditional class certification is whether Plaintiff's evidence indicates that the propriety

of the exempt classification may be determined on a collective basis, and not merely whether the alleged mis-classification affected all the proposed class members. *Id.* at 630.

### 1. Putative Class Members are Not Similarly Situated Merely Because They Are Grouped in the Medicare-Outreach Sub-division

Plaintiff asserts in her motion that the proposed class members are similarly situated in terms of job duties, at least in part, by virtue of their membership in the Medicare Outreach sub-division:

> Ms. Davis and her fellow class members share an essential job function:  they are all part of (one of many) divisions within SSC:  "Outreach and Operations"  Moreover, they were all part of either the "Medicare Intake & GT" or "Medicare Outreach" sub-divisions.   Their shared essential function is regularly reaching out to SSC client/customers to gather information and/or then filling-out/submitting a predetermined set of forms related to government-sponsored programs.  This sub-division-membership is a glue that binds everyone in this conditional class and makes collective treatment particularly appropriate.

(Doc. 52, 20:3-9.)

To the extent that Plaintiff contends that membership in the Medicare Outreach sub-division alone is sufficient to render similar all the employees' primary job duties, this argument is not persuasive. (*See* Doc. 52, 20, 3-9; Doc. 59, 10:1-2 ("The sub-division title ties these employees to one another for purposes of the notice stage . . . ").  Even if all employees in the Medicare Outreach sub-division are working toward the same goal or the same end result, i.e., to process client applications for government programs, it cannot be inferred that their primary duties in doing so were necessarily similar or that common evidence would be used to prove that they were mis-classified.  There must be "further allegations" supported by some evidence that the proposed class members in the Medicare Outreach sub-division share similar, although not necessarily identical, primary job duties.  *See Kress*, 263 F.R.D. at 629-30 (where a case involves a claim of mis-classification, courts usually require plaintiffs to "provide some further allegations or evidence indicating that prospective class members share similar job duties").

### 2. Plaintiff Has Provided Some Evidence that She is Similarly Situated to Other Putative Class Members Who Conducted Client/Member Outreach Services Within the Medicare Outreach Sub-division

Plaintiff asserts that the class members shared an essential function by "regularly reaching out to SSC clients/customers to gather information and/or then filling-out/submitting a

predetermined set of forms related to government-sponsored programs." (Doc. 52, 20:5-8.) Each potential class member "focused on contacting SSC clients/members, interviewing them, and then filling out forms." (Doc. 52, 20:1-12.) "In short, members of the potential collective class were all part of the process of making contact with pre-determined clients/members, and then filling out and pushing through the various forms mandated by SSC's process (in turn determined by healthcare laws and set requirements)." (Doc. 52, 20:23-21:2.)

Further, Plaintiff maintains that all of the proposed class members were strictly controlled and regulated in their job duties by statutory requirements, lists, scripts, checklists, and strict quotas. (Doc. 52, 21:3-5.) For example, all of the collective class' calls were made from a pre-determined list mandated by SSC. (Doc. 52, 21:6.) Once calls were placed, during the entire process, all of the "intake/outreach" employees would adhere to written policies, including scripts, that were implemented by SSC. (Doc. 52, 21:7-9.) All the employees in the class were guided by an Employment Manual or "Handbook." (Doc. 52, 21:9-10.) Proposed class members were provided written checklists to determine whether a client member met the applicable state's requirements for program enrollment; once the application was completed, it was sent to a Case Reviewer who would determine whether the application met all the requirements or whether additional information was needed. (Doc. 52, 21:19-23.) Proposed class members were also required to adhere to strict quotas. (Doc. 52, 21:24.) According to Plaintiff, the quotas dictated a specific amount of time per day intake/outreach employees were to spend following-up and working on "in progress" cases via outbound calls. (Doc. 52, 21:24-25:1.) If these employees did not reach their quotas, they were routinely reprimanded by their supervisors.

Specifically, Plaintiff has identified the following exempt job titles in the Medicare Outreach sub-division whose primary job duties Plaintiff claims are similar to her own duties as a Remote Case Manager: other Remote Case Managers, Follow-Up Specialists, Eligibility Counselors I and II, Case Managers, and Field Coordinators. As discussed below, Plaintiff has provided substantial allegations supported by some evidence that the job duties of these positions were sufficiently similar at the notice stage.

### a.    Remote Case Manager and Field Coordinator Positions

According to SSC's job description, Plaintiff's "Remote Case Manager" position is summarized as follows:

> This position (Remote Case Manager) works from their own home, conducting telephonic outreach services to low-income Medicare beneficiaries enrolled in a contracted Medicare Advantage health plan. The Remote Case Manger will assist these members apply for Medicaid programs, including but not limited to the Medicare Savings Programs.

(Doc. 54, Tomasevic Decl., Exh. 4, p. 19-20.) The essential responsibilities of this position include, among other things, conducting telephonic outreach activities, meeting quality standards by ensuring proper phone etiquette, adhering to scripts, meeting daily, weekly, and monthly production goals, and adhering to strict compliance of all aspects of SSC's outreach operations. (Doc. 54, Tomasevic Decl., Exh. 4, p. 19.) Along with her own declaration, Plaintiff submitted the declarations of three other SSC employees who performed work as "Remote Case Managers." (Doc. 47-4, Davis Decl.; Doc. 47-10, Goss Decl.; Doc. 47-11, Barron Decl.; Doc. 47-12, Rivers Decl.)[6] Each Remote Case Manager states that she worked full-time from her home and was not physically located at SSC's call-center in Florida, and that her primary duty was making outbound telephone calls to pre-determined or pre-qualified clients regarding their potential participation in Medicare plans or programs. (Doc. 47-4, Davis Decl., ¶¶ 2-3; Doc. 47-10, Goss Decl., ¶¶ 2-3; Doc. 47-11, Barron Decl., ¶¶ 2-3; 47-12, Rivers Decl., ¶¶ 2-3.) All four Remote Case Managers also state that they called SSC clients from a computer-generated list of people, which was provided by SSC (Doc. 47-4, Davis Decl., ¶ 3; Doc. 47-10, Goss Decl., ¶ 3; Doc. 47-11, Barron Decl., ¶ 3; 47-12, Rivers Decl., ¶ 3); none could recall ever calling someone who was not on a pre-determined list or transferred from a co-worker; (Doc. 47-4, Davis Decl., ¶ 3; Doc. 47-10, Goss Decl., ¶ 3; Doc. 47-11, Barron Decl., ¶ 3; 47-12, Rivers Decl., ¶ 3);

The Remote Case Managers state they were under the close supervision of an SSC manager, made calls from a pre-determined list, and operated according to SSC's written scripts and guidelines. (Doc. 47-4, Davis Decl., ¶ 11; Doc. 47-10, Goss Decl., ¶ 12; Doc. 47-11, Barron Decl.,

---

[6] The docket text entry at Doc. 47-4 lists the declarant as "Katie Gross," but the declaration itself was submitted and signed by "Kristie Goss."

¶ 12; Doc. 47-12, Rivers Decl., ¶ 12).  Each Remote Case Manager had a quota of outbound calls requiring a specific amount of time per day that was to be spent making calls and dictated an average talk-time per call; (Doc. 47-4, Davis Decl., ¶ 8; Doc. 47-10, Goss Decl., ¶ 8; Doc. 47-11, Barron Decl., ¶ 8; 47-12, Rivers Decl., ¶ 8); and had monthly quotas, and was reprimanded by her superiors at SSC if she did not meet the call-time quotas (Doc. 47-4, Davis Decl., ¶ 8; Doc. 47-10, Goss Decl., ¶ 8; Doc. 47-11, Barron Decl., ¶ 8; 47-12, Rivers Decl., ¶ 8).  All the Remote Case Managers viewed the quotas SSC set to be high and virtually impossible to achieve without working overtime. (Doc. 47-4, Davis Decl., ¶ 8; Doc. 47-10, Goss Decl., ¶¶ 9-10; Doc. 47-11, Barron Decl., ¶ 9; Doc. 47-12, Rivers Decl., ¶ 9.)  They were compensated on a salary basis, routinely worked in excess of 40 hours, but were not paid overtime.  (Doc. 47-4, Davis Decl., ¶ 14; Doc. 47-10, Goss Decl., ¶ 14; Doc. 47-11, Barron Decl., ¶ 14; Doc. 47-12, Rivers Decl., ¶ 14).

Two declarants, Kristie Goss and Natalie Rivers, indicated that they also performed work for SSC in the position of "Field Coordinator."  As a Field Coordinator, they each completed the same tasks as a Remote Case Manager, but as Field Coordinators, they were also required to meet with clients face to face.  (Doc. 47-10, Goss Decl., ¶ 1; Doc. 47-12, Rivers Decl., ¶ 1.)

### b.    Case Manager Position

The job title Case Manager held very similar duties as that of a Remote Case Manager, and SSC's job description summarizes those duties as follows:

> This position holds accountability for conducting telephonic outreach services and assisting low-income Medicare beneficiaries enrolled in a contracted Managed Care Organization Medicare+Choice health plan, with the qualification and application process for Medicare Savings Programs.

(Doc. 54, Tomasevic Decl., Exh. 4, p. 27.)  The job description provides "essential responsibilities" which included, among other things, conducting telephonic outreach activities for initial and follow-up contact, including analysis and assessment of state Medicaid eligibility criteria into Medicare Savings Programs, meeting daily, weekly, and monthly production goals, meeting quality standards by ensuring phone etiquette and adherence to scripts, and adhering to strict compliance of all aspects of SSC's Outreach Operations.  (Doc. 54, Tomasevic Decl., Exh. 4, p. 27.)

Plaintiff submitted declarations from seven SSC Case Managers describing their primary job duties while employed as Case Managers.  (Doc. 47-5, Smith-Martin Decl.; Doc. 47-6, Jean-Louis Decl.; Doc. 47-7, Bach Decl.; Doc. 47-8, Dixon Decl.; Doc. 47-9 De La Hoz Decl.; Doc. 47-13, Aguila Decl.; Doc. 47-14 Salehi Decl.)  The Case Managers uniformly state that they worked in that position at SSC's facility located near Miami Lakes, Florida, at an outreach call center, where they worked with and spoke to other SSC employees in the same facility.   (Doc. 47-5, Smith-Martin Decl. ¶ 2; Doc. 47-6, Jean-Louis Decl. ¶ 2; Doc. 47-7, Bach Decl. ¶ 2; Doc. 47-8, Dixon Decl. ¶ 2; Doc. 47-9 De La Hoz Decl. ¶ 2; Doc. 47-13, Aguila Decl. ¶ 2; Doc. 47-14 Salehi Decl. ¶ 2.)  All of the Case Managers describe their primary duties as follows:

> my primary duty was making outbound telephone calls to pre-determined or pre-qualified clients regarding their potential participation in Medicare plans or programs.  I called clients from a written list of people.  That list was always provided to me by SSC.  I cannot remember a time that, as part of my regular duties, I called someone who was *not* on this predetermined list or, on some occasions, transferred to me directly from a co-worker.

(Doc. 47-5, Smith-Martin Decl. ¶ 3; Doc. 47-6, Jean-Louis Decl. ¶ 3; Doc. 47-7, Bach Decl. ¶ 3; Doc. 47-8, Dixon Decl. ¶ 3; Doc. 47-9 De La Hoz Decl. ¶ 3; Doc. 47-13, Aguila Decl. ¶ 3; Doc. 47-14 Salehi Decl. ¶ 3.)  Additionally, all the Case Managers report spending the majority of their workday on the phone conducting outreach to potential Medicare applicants, and the remainder of their day filling out forms, entering information into SSC's database, and ensuring that proper materials were mailed to the medicare program applicant (Doc. 47-5, Smith-Martin Decl. ¶ 7; Doc. 47-6, Jean-Louis Decl. ¶ 7; Doc. 47-7, Bach Decl. ¶ 7; Doc. 47-8, Dixon Decl. ¶ 7; Doc. 47-9 De La Hoz Decl. ¶ 7; Doc. 47-13, Aguila Decl. ¶ 7; Doc. 47-14 Salehi Decl. ¶ 7.)  All the Case Managers report that SSC maintained quotas regarding the time spent making outbound calls as well as average talk-time per call, and that the quotas were unreasonably high and impossible to achieve without working overtime .  (Doc. 47-5, Smith-Martin Decl. ¶¶ 8-9; Doc. 47-6, Jean-Louis Decl. ¶¶ 8-9; Doc. 47-7, Bach Decl. ¶¶ 8-9; Doc. 47-8, Dixon Decl. ¶¶ 8-9; Doc. 47-9 De La Hoz Decl. ¶¶ 8-9; Doc. 47-13, Aguila Decl. ¶¶ 8-9; Doc. 47-14 Salehi Decl. ¶¶ 8-9.)  The Case Managers further reported they were compensated on a salary basis, routinely worked more than 40 hours per week, but were not paid overtime.  (Doc. 47-5, Smith-Martin Decl. ¶ 13; Doc. 47-6, Jean-Louis Decl. ¶ 13; Doc. 47-

7, Bach Decl. ¶ 14; Doc. 47-8, Dixon Decl. ¶ 13; Doc. 47-9 De La Hoz Decl. ¶ 13; Doc. 47-13, Aguila Decl. ¶ 16; Doc. 47-14 Salehi Decl. ¶ 13.)

### c.   Follow-Up Specialist Position

Plaintiff also identified the job title of "Follow-Up Specialist" as an exempt position within the Medicare Outreach sub-division.  The job duties of a Follow-Up Specialist are summarized in an SSC job description as follows:

> This position holds accountability for conducting telephonic outreach services and assisting low-income Medicare beneficiaries enrolled in a contracted Managed Care Organization Medicare+Choice health plan, with the qualification and application process for Medicare Savings Programs.

(Doc. 54, Tomasevic Decl., Exh. 4, p. 21.)  The "essential responsibilities" of the position include, among other things, conducting follow-up telephonic outreach activities, meeting daily, weekly, and monthly production goals, meet quality standards by ensuring proper phone etiquette and adherence to scripts, and adhere to strict compliance of all aspects of SSC's Outreach Operations.  (Doc. 54, Tomasevic Decl., Exh. 4, p. 21.)

### d.   Eligibility Counselor I & II Positions

Plaintiff also identified two "Eligibility Counselor" exempt positions within the Medicare Outreach sub-division. The "Eligibility Counselor I" position, an exempt job title within the Medicare Outreach sub-division, is described by SSC as follows:

> This position services to assist low-income Medicare beneficiaries enrolled in a contracted Managed Care Organization Medicare+Choice health plan, with the qualification and recertification process for Medicare Savings Programs.  The recertification team conducts telephonic outreach to remind, assist, and keep the members enrolled by either phone outreach or mailings.  This outreach is performed before and around the members['] recertification date.

(Doc. 54, Tomasevic Decl., Exh 4, p. 25.)  The essential responsibilities of this position include, among other things, conducting telephonic outreach for members who need to recertify or are eligible for Medicare Savings Programs, meeting daily, weekly, and monthly production goals; ensuring proper phone etiquette and adhering to scripts, and adhering to strict compliance of all aspects of SSC's Outreach Operations.  (Doc. 54, Tomasevic Decl., Exh. 4, p. 25.)

The position of Eligibility Counselor II is described as follows:

> This position is responsible for conducting telephonic outreach services to low-income Medicare beneficiaries enrolled in an SSC contracted Managed Care Organization Medicare+Choice health plan.  The Eligibility Counselor II makes outbound telephone calls and handles inbound telephone calls to assist M+C plan members who lost their Medicare Savings Programs (MSP) to reapply for the benefit.

(Doc. 54, Tomasevic Decl., Exh 4, p. 23.)  The essential job responsibilities include, among other things, meeting production and departmental goals by conducting telephonic outreach activities to already enrolled members, and adhering to strict compliance of all aspects of SSC's Outreach Operations.  (Doc. 54, Tomasevic Decl., Exh 4, p. 23.)

### e.    Conclusion

While the primary job duties of these employees may vary slightly,  Plaintiff asserts that they all exercised little discretion because it was SSC's policy to require them to use pre-generated call lists, scripts and checklists for conversations with members/clients, and maintain adherence to production quotas and "talk time" requirements.  As discussed in Section IV(D)(4), *infra*, variations in day to day duties or differences in the programs about which the employees contacted members, are not the type of differences that preclude notice to the proposed class at this stage.  Plaintiff has sufficiently established that employees working at these exempt positions within the Medicare Outreach sub-division are similarly situated because there is some evidence that they share similar primary job duties.

### 3.    Asserted Missing "Comparators" is Speculative and Does Not Preclude Notice

SSC argues that Plaintiff fails to identify all the job titles within the Medicare Outreach sub-division and the job duties associated with each title.  Without information about what job titles are encompassed in the Medicare Outreach sub-division, SSC argues it is impossible to evaluate whether all members of the proposed class are similarly situated and how common evidence will establish that all the employees' positions were mis-classified as "exempt."  (Doc. 51, 9-10.)

Plaintiff counters that SSC does not cite any authority that requires Plaintiff to expressly "identify each and every job title that SSC happened to create.  What matters, instead, is whether or not there is some evidence that employees are "similarly situated" – not that they, for instance, carry the same 'title.'"  Plaintiff also essentially asserts that SSC's position in this regard is unfair to Plaintiff.  Specifically, Plaintiff maintains in her reply brief as well as in argument during the July

18, 2012, hearing, that, had SSC provided the discovery that Plaintiff sought regarding job descriptions and a list of all job titles in the Medicare Outreach sub-division, Plaintiff would have all the information about the employees' various job titles and duties.  Plaintiff argues that, for SSC to resist discovery about job titles by division of the company, and then assert that Plaintiff's motion does not provide evidence regarding the various job titles and duties within the division, is disingenuous.

Plaintiff's original motion sought notice certification as to employees in *two* sub-divisions ("Intake and GT" and "Medicare Outreach"), but the motion itself does not clearly delineate positions within the "Intake and GT" sub-division that would be included in the class.[7]  Plaintiff has narrowed the class to exclude any position in the "Intake and GT" sub-division.   Thus, as it relates to unidentified job titles within the "Intake and GT" sub-division, SSC's concerns are moot.  As it relates to all job titles within the Medicare Outreach sub-division, the job descriptions provided by Plaintiff in support of the motion clearly identified those positions as part of the Medicare Outreach sub-division.  Plaintiff represented at the hearing that, to the best of her counsel's knowledge, all job titles within the sub-division have been identified in the motion and supporting materials; however, Plaintiff could not definitively confirm this without a list from SSC of all exempt positions within the sub-division.

At the hearing, SSC's counsel was asked whether Plaintiff's motion accounted for every job title within the Medicare Outreach sub-division; SSC stated it could not definitively answer this question given the information available to SSC's counsel.  Thus, any argument that Plaintiff has not identified all exempt, non-supervisory positions within the Medicare Outreach sub-division is mere speculation.

Finally, any issue related to unidentified job titles within the Medicare Outreach sub-division has been cured by Plaintiff's re-shaped class because it limits the class membership to those who performed "outreach duties" in the Medicare Outreach sub-division.  For example,  in *Santiago v.*

---

[7] In her motion, Plaintiff refers to the sub-division as "GT and Intake," but SSC Human Resource director Cristina Pinckney, appears to refer to the sub-division as two separate divisions, the "Intake" and "GT" divisions. (*See* Doc. 51-1, Pinckney Decl., ¶ 18.)  SSC's Outreach & Operations organization charge references a "Medicare Intake & GT" sub-division.  (Doc. 54, Tomasevic Decl., Exh. 1, p. 8.)

*Amdocs, Inc.*, No. C 10-4317 SI, 2011 WL 6372348, at * 5 (N.D. Cal. Dec. 19, 2011), the plaintiffs sought to certify a class of employees working in "job families" within a company.   Plaintiff narrowed the class definition to include a description of primary job duties of the class members after the defendant objected that the class was so broadly drawn by "job family" that it included positions that bore no resemblance to the jobs held by the plaintiffs. *Id*. at * 5 n.5.   The narrowed class was found suitable for notice certification over defendant's objection that the class still included over 100 positions, even though not all the positions were identified by title. *Id.* at *6-7.   Similar to *Santiago*, Plaintiff has tied the re-shaped class definition to job duties in manner that eliminates from the class those employees whose work responsibilities do not include client/member outreach activities.

SSC argues in its supplemental opposition (Doc. 71) that the class definition remains overly broad because it may include those who "rarely performed 'outreach duties' despite the fact that such person's primary duty did not include any 'outreach duties.'"  (Doc. 71, p. 3.)   Unlike the defendants in *Santiago*, SSC offers no particular example of such a position within the Medicare Outreach sub-division.   There is no evidence before the Court that there are putative class members who "rarely" conducted outreach activities/duties – rather, there is job-description evidence that all of the putative class members' responsibilities included conducting outreach activities/duties.   Plaintiff's previous class definition contained no reference to job duties, and the evidence before the Court included a job description of a position within the sub-division (case reviewer) that included no outreach activities to clients of SSC.   As Plaintiff's re-shaped class not only excludes case reviewers expressly, but is limited to those who conducted outreach duties, dissimilar job positions have been sufficiently eliminated from the class for purposes of notice at this stage.   This adequately addresses the original concerns set forth in the August 28, 2012, F&Rs.

As Plaintiff notes, multiple district courts have approved notice to a conditional class defined in similar terms to that which Plaintiff proposes here. *See Santiago*, 2011 WL 6372348, at * 5 (certifying conditional class of employees who "performed computer support, trouble shooting, testing related to repairs and problem solving" and other related functions); *Gipson v. Southwestern Bell Telephone Co.*, No. 08-cv-2017 EFM/DJW, 2009 WL 10444941, at *3 ((D. Kan. Apr. 20, 2009) (approving class of "telephone dedicated customer service representatives"); *Lewis*, 669 F.

1    Supp. 2d at 1129 (conditionally certifying class of "technical support workers with primary duties

2    of installing, maintaining, and /or supporting software and or hardware").

3         SSC also argues that the proposed class is overbroad because it refers to "outreach duties,"

4    which is an undefined term.  Although the term "outreach duties" is used in the class definition,

5    SSC's job descriptions repeatedly utilize the term "outreach activities."  (Doc. 54, p. 19 (Number 1

6    "essential responsibilities" of Remote Case Manager to "[c]onduct telephonic **outreach activities**

7    . . . "); Doc. 54, p. 21 (Number 1 "essential responsibilities" of Follow-up Specialist to "[c]onduct

8    follow-up telephonic **outreach activities**"); Doc. 54, p. 23 (Number 1 "essential responsibilities of

9    Eligibility Counsel II to "[m]eet production/departmental goals by conducting telephonic **outreach**

10   **activities**"); Doc. 54, p. 25 (Number 1 "essential responsibilities" of Eligibility Counselor I to

11   "[c]onducts telephonic **outreach activities** . . . "); Doc. 54, p. 27 (unenumerated "essential

12   responsibilities" of Case Manager to "[c]onduct telephonic **outreach activities** . . . ").[8]  SSC's

13   argument that Plaintiff fails to define what specifically would qualify as an "outreach duty" is not

14   persuasive to the extent that SSC itself uses the term "outreach activities" in each of the proffered

15   job descriptions for positions within the Medicare Outreach sub-division that fit within the class

16   definition. The class definition is not rendered ambiguous because it is tailored to include employees

17   whose responsibilities included "outreach duties."  Based on the evidence presented by Plaintiff,

18   those who conducted "outreach duties" in the Medicare Outreach sub-division were primarily

19   engaged in contacting SSC's members/clients through the use of pre-generated contact lists, the

20   interactions with SSC's clients/members were scripted, and the quantity of outreach activities was

21   dictated by quotas set by SSC.

22        **4.      Some Difference Among Class Members Does Not Defeat Notice Certification**

23        The Court is not convinced that differences in some duties among putative class members

24   who were primarily engaged in contacting SSC's members/clients, such as differences in the type of

25   programs marketed to SSC's members, geographical locations of employees, differences in

26   supervision, or differing quotas, are distinctions that necessarily preclude notice at this stage.  *See*

27

28        [8] Emphasis added to the cited and quoted portions of the record.

*Castillo v. P & R Enterp., Inc.*, 517 F. Supp. 2d 440, 446 (D.D.C. 2007) ("Although Defendant claims that employees cannot be similarly situated when they have 'different duties' and different 'job titles,' the putative class members are or were employed by Defendant to clean commercial real estate buildings in Washington, D.C. . . . The Court agrees with Plaintiff that '[t]he fact that some employees clean lobbies while others clean restrooms . . . is irrelevant.'").

These issues are more appropriately considered at the second stage when discovery has been completed. For example, in *Gipson*, the plaintiff sought to certify a class for notice that included all telephone dedicated customer service representatives at SWBT call centers that assist new or existing customers with activating or updating new accounts, assist with billing inquiries, and handle service or equipment issues. 2009 WL 10444941, at *3. The court held that "[v]ariations among actual job title or some responsibilities does not preclude notice stage certification where all employees share general duties and the defendant denies overtime pay to all." *Id.* The court also determined that the defendant's concerns about disparate employment settings, organizational differences between call centers, and defenses particular to individual plaintiffs were more appropriately considered at the second stage. *Id.*

### 5.     Temporal Scope of Proposed Class

SSC argues that conditional certification should be denied because Plaintiff fails to provide any time limitations whatsoever on the scope of the class. (Doc. 71, p. 4.) SSC asserts that the statute of limitations for FLSA actions is two or three years, depending on whether there are allegations of willful violations. A cause of action for an individual who is a member of the FLSA collective action commences on the date the individual files a written consent with the court, and the maximum application statute of limitation is three years. SSC cites *In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d 910, 966 (D. Minn. 2010) for the proposition that notice must be consistent with this determination. (Doc. 71, p. 5.) SSC essentially argues that the proposed class is overly broad and cannot be conditionally certified because the class definition does not specifically limit when a putative class member performed "outreach services"; when they worked in the Medicare Outreach sub-division; when they worked overtime; when they worked exclusively as a

1  President, Vice-President, Director, Supervisor, Team Lead, or Case Reviewer; or when they were

2  employed by SSC.  (Doc. 71, p. 5.)

3       Plaintiff argues that statute-of-limitations concerns are more appropriately addressed at the

4  second stage.  Plaintiff asserts that if the Court is concerned with limiting the scope of the notice,

5  it should limit it to those employees who worked at any time in the three-year period **prior to filing**

6  **of the complaint – i.e., December 20, 2007.**

7       The FLSA expressly provides that in a collective action, an individual claimant's action

8  commences at the time the written consent is filed with the court.  29 U.S.C. § 256.  Across the

9  nation, however, district courts differ in setting the time period for which notice must be sent.  Some

10  courts have measured the limitations period to be three years preceding the date that the court

11  ordered that notice be given.  *See, e.g., Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 435

12  n. 5 (D. Kan. 2007).  Other courts have measured the period from three years preceding the filing

13  of the complaint.  *See, e.g., Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-cv-

14  00722-RCJ-PAL, 2009 WL 102735, at *13 (D. Nev. Jan. 12, 2009).  Courts have also measured the

15  period from the date of the mailing of the notice.  *See, e.g., Doucoure v. Matlyn Food, Inc.*, 554 F.

16  Supp. 2d 369 (E.D.N.Y. 2008).

17       While the proposed class will be necessarily limited by the scope of the notice, the more

18  difficult question is how the temporal scope of the class should be measured when considering the

19  applicable statute of limitations.  Plaintiff maintains that she will file a motion to toll the statute of

20  limitations for all class members, essentially asserting that putative class members who worked for

21  SSC up to three years prior to the filing of the complaint may not be barred from suit and thus are

22  entitled to notice of the action.  (Doc. 72, 6:4 n. 4).  The Court takes no position on the merits of any

23  motion to toll the statute of limitations.  However, as  Plaintiff has alleged SSC willfully violated

24  the FLSA, and because the tolling of the statute of limitations is an open issue, it is appropriate that

25  the class definition and the notice be limited to those who were employed by SSC at any time since

26  December 20, 2007, i.e., 3 years prior to the date the complaint was filed.  *Belcher v. Shoney's, Inc.*,

27  927 F. Supp. 249, 252 (M.D. Tenn. 1996); *see also Guzelgurgenli v. Prime Time Specials Inc.*, __ F.

28  Supp. 2d __, 2012 WL 3264314, at *14 (E.D.N.Y. Aug. 8, 2012) (noting that, in light of potential

tolling issues, the notice would be sent to all employees who worked for employer 3 years prior to the date the complaint was filed); 29 U.S.C. § 255(a) (willful violations are subject to 3-year statute of limitation).

Plaintiff's proposed class should be modified to include the temporal limitation Plaintiff provides in her proposed notice, i.e., those putative class members who worked for SSC from December 20, 2007, to the present. (Doc. 69-1, p. 40.)  This addresses SSC's hypothetical concern that the class would include, for example, someone who worked as a case reviewer for the last 10 years, but performed outreach activities prior to that time.  (*See* Doc. 71, p. 3.)  The temporal limitation narrows the class to those who worked in a position that fits the class description since December 20, 2007.

### 6.   Plaintiff Filed a Valid Consent With the Complaint and Second Amended Complaint

SSC argues that Plaintiff and all other putative class members failed to file a written consent-to-suit; thus, the action has not been properly commenced under Section 216(b).  Plaintiff notes that her express consent to suit was filed as an exhibit to her complaint and her subsequent amended complaints; as such, she has sufficiently consented to the suit and commenced the action.  As indicated in the reply brief, each amended complaint, including the original complaint, contained an express written consent to suit signed by Plaintiff Lisa Davis. (*See* Doc. 1, Exh. A, p. 50; Doc. 6, Exh. A, p. 50; Doc. 27, Exh. A, p. 36.)  At the July 18, 2012, hearing, SSC conceded that Plaintiff has filed a consent to suit.  Thus, SSC's argument in this regard is moot.

### 7.   Lack of Other Opt-In Consent Does Not Preclude Notice

SSC asserts that, although Plaintiff has provided 10 declarations in addition to her own in support of her motion, none of these declarants has filed a consent to opt-in to this case, a factor to be considered at the conditional certification stage.  (Doc. 51, p. 11-12.)  While some courts have required a plaintiff to make an affirmative showing that there are other individuals who desire to opt-in to the case, several courts, including courts in this district, have rejected such a requirement for conditional certification. *Gomez v. H&R Gunlund Ranches, Inc.*, No. CV F 10-1163-LJO-MJS, 2010 WL 5232973, at *5 (E.D. Cal. Dec. 16, 2010).  In *Gomez*, the defendants argued that conditional

certification is not available unless a plaintiff makes an affirmative showing that there are other individuals who desire to opt-in to the class. *Id.* The court rejected this argument noting that this additional requirement at the notice stage "has almost never been applied outside the Eleventh Circuit, and has never been applied in the Ninth Circuit." *Id.* The court concluded that the plaintiffs were not required to demonstrate other opt-in plaintiffs were interested in joining the case at the notice stage of the proceedings. *Id.*

SSC offers no reasons why such a showing should be required in this case, or why the Court should depart from its prior determination in *Gomez*. The lack of other consenting opt-in plaintiffs or a demonstrated interest by others in joining the suit is irrelevant at this stage of the proceedings. *See Harris v. Vector Marketing Corp.*, 716 F. Supp. 2d 835, 839 (N.D. Cal. 2010) ("The fact that other potential class members have not affirmatively stated a desire to opt in does not preclude conditional certification."); *Mowdy v. Beneto Bulk Transp.*, No. C 06-05682 MHP, 2008 WL 901546, at *7 (N.D. Cal. Mar. 31, 2008) (dismissing argument that plaintiffs must demonstrate opt-in interest prior to conditional certification, finding: "As a practical matter it would make little sense to require plaintiffs to have the knowledge they attempt to obtain by gaining approval of notice from the court."); *Hoffman v. Securitas Sec. Servs.*, No. CV 07-502-S-EJL, 2008 WL 5054684, at * 5 (D. Idaho Aug. 27, 2008) ("such a threshold requirement strikes this Court as contradictory to the very notion of providing *notice* to potential plaintiffs of the opportunity to become part of a collective action – what the FLSA expressly provides").

**8.      Plaintiff's Testimonial Evidence is Sufficient For Consideration at this Stage**

SSC also argues that the declarations submitted by Plaintiff are too speculative and conclusory to constitute evidence sufficient to support conditional class certification. (Doc. 51, p. 12.) Specifically, SSC targets the declarations filed by the Case Managers in which they indicate that they observed their primary duties were similar to other positions at SSC, including those of Remote Case Managers, Eligibility Counselors, and Field Coordinators. Defendant notes that these statements are predicated only on the declarants' *beliefs*, and do not indicate how any declarant has personal knowledge of what work other employees performed in differing positions. Further, a statement as to an individual's belief about the work performed by other employees is speculative.

1    SSC asserts that the declarations are "chock-full of boilerplate and legal conclusions."  For

2    example, SSC notes that Natalie Rivers' declaration includes statements about the job duties of Case

3    Managers, but does not set forth how she obtained first-hand information about the job duties of

4    Case Managers.  SSC further contends that Rivers' statement about her lack of discretion in

5    performing her work as a Remote Case Manager "suspiciously tracks the Code of Federal

6    Regulations."  (Doc. 51, p. 14.)

7    "[A]t this stage, under a lenient standard, the use of similarly worded or even 'cookie cutter'

8    declarations is not fatal to a motion to certify an FLSA collective action."  *Bollinger v. Residential*

9    *Capital, LLC*, 761 F. Supp. 2d 1114, 1120 (W.D. Wash. 2011); *see also Labrie v. UPS Supply Chain*

10   *Solutions, Inc.*, No. C08-3182 PJH, 2009 WL 723599, at *6 (N.D. Cal. Mar. 18, 2009) (determining

11   defendant's argument that plaintiffs' "identical, conclusory declarations" were not competent

12   evidence as an argument going to the merits and more appropriately addressed on a motion to

13   decertify or for summary judgment).  The fact that the declarations are very similar may implicate

14   reliability issues, but that goes to the weight of the evidence which is better assessed at the second

15   stage.

16   As it relates to SSC's concerns that the declarations contain speculative statements or make

17   assertions that lack foundation, a plaintiff's evidence offered in support of a motion for conditional

18   certification is generally not required to meet the same evidentiary standards applicable to summary

19   judgment motions.  As discussed in *Fischer v. Michigan Bell Telephone Co.*, 665 F. Supp. 2d 819,

20   826 (E.D. Mich. 2009), "[b]ecause final disposition is not an issue at the conditional certification

21   stage, requiring a plaintiff to present evidence in favor of a conditional certification that meets the

22   hearsay standards of the Federal Rules of Evidence fails to [take] into account that the plaintiff has

23   not yet been afforded an opportunity, through discovery, to test fully the factual basis of his case."

24   (internal quotation marks and citations omitted).  SSC's contention that the declarations offered by

25   Plaintiff do not constitute sufficient evidence because they are speculative, contain hearsay, or

26   contain statements for which the declarant lacks personal knowledge, does not disqualify the

27   evidence for purposes of establishing similar job duties among class members at the notice stage.

28   *See Stickle v. SCI W. Market Support Center, L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at

*5 (D. Ariz. Sept. 30, 2009) (rejecting defendants' argument that plaintiff's testimonial evidence in support of conditional class certification should be disregarded for containing statements that (1) lacked personal knowledge, (2) were hearsay, and (3) were conclusory, speculative, and unsupported personal beliefs about what other employees said or did).

In particular, SSC argues that several declarants made statements about the nature of work that other employees performed. Even to the extent the Court disregarded any statements from Plaintiff's declarants about the work performed by other employees due to lack of adequate foundation, this would not preclude Plaintiff's motion. As a "Remote Case Manager" working from her home, Natalie Rivers may not have personal knowledge about work performed by Case Managers, and she does not set out the basis for her knowledge regarding the work duties of Case Managers who worked at the Florida call center. However, multiple Case Managers have provided statements regarding their job duties. Further, as to Case Managers who testified that their duties were similar to Remote Case Managers, Eligibility Counselors, and Field Coordinators, even if those statements were disregarded for lack of foundation, Plaintiff has presented testimonial and non-testimonial evidence of the primary job duties of these positions. Thus, even to the extent these statements were disregarded, it is not fatal to Plaintiff's motion.

### 9.     Plaintiff Has Sufficiently Alleged a Company-Wide, Decision, Policy, or Plan

SSC argues that Plaintiff has shown no evidence to support her allegation of a company-wide decision, policy, or plan. "Under the 'single decision, policy, or plan' standard, employees with disparate job functions may be similarly situated with respect to a FLSA claim where they are uniformly subject to an allegedly wrongful policy." *Gee v. Suntrust Mortg., Inc.*, No. C-10-1509-RS, 2011 WL 722111, at *3 (N.D. Cal. Feb. 18, 2011). However, a mis-classification claim, standing alone is insufficient as a "single policy" warranting class treatment. *Id*. As explained in *Kress*, taken literally, this would allow plaintiffs to receive conditional certification based purely on an allegation of mis-classification, no matter how disparate the job duties, which would vitiate the utility of a collective action. However, where the class members share similar job duties, a uniform classification as exempt from overtime pay by the defendant may suffice at the notice stage. *See Lewis*, 669 F. Supp. 2d at 1128. In *Lewis*, the plaintiff sought to certify a class of "technical support

workers" with primary duties of installing, maintaining, and/or supporting software and/or hardware. *Id*. at 1126 n.2.  The court held that the plaintiffs met their burden of showing that all technical support workers were similarly situated and were together the victims of a single decision, policy, or plan by showing that they all shared a common job description, they were uniformly classified as exempt from overtime pay, and they performed similar job duties.  *Id.* at 1128.

SSC's citation to *In re Wells Fargo Home Mortg. Overtime Pay Litig.* ("*Wells Fargo*"), 571 F.3d 953, 959 (9th Cir. 2009) echos the observations of *Gee* and *Kress* that an employer's blanket exemption policy in mis-classification cases "does nothing to facilitate common proof on otherwise individualized issues."[9]  The Ninth Circuit illustrated this concept by considering the federal outside salesperson exemption under 29 C.F.R. § 541.500(a).  *Id.*  The court explained that the exemption application itself "will militate against certification" because it "requires a fact intensive inquiry" to determine whether each employee is customarily and regularly away from the employer's place of business.  *Id.* However, if the employer had a centralized policy that required employees to be at their desks for 80% of their workday, this "would change the individual issue into a common one."  *Id.*

Here, determining whether certain SSC employees exercised little discretion or independent judgment in their jobs such that they were mis-classified as "exempt" is necessarily an individual inquiry.  However, if the employer had a policy of requiring every class member to meet a certain quota of hours of "talk time" or personal outreach to clients each day using a similar script for the interaction in a manner that afforded them little discretion, then the issue of discretion and the exercise of independent judgment becomes common to the class by virtue of the employer's policy, as explained in *Wells Fargo*.  That is precisely the type of common, centralized policy that Plaintiff is asserting in this case – she is not relying exclusively on the mis-classification to support a

---

[9] *Wells Fargo* was a review of class certification under Rule 23.  SSC also cites other cases that re-state the same proposition in a variety of procedural contexts.  *Hernandez v. United Auto Credit Corp.*, No. C-08-03404, 2010 WL 1337702, at *7 (N.D. Cal. Apr. 2, 2010) (granting motion for decertification where actual duties performed by class members varied significantly, even though all were classified as exempt); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (applying stricter second-stage standard to deny conditional certification); *Chemi v. Champion Mort.*, No. 05-cv-238-WHW-CCC, 2006 U.S. Dist. Lexis 100917, at *6 (D.N.J. June 19, 2006).

1  collective action.  Similarly, this is also what Plaintiff contends supports her theory that class

2  members will rely on common evidence to establish the class was improperly classified.

3      **10.    Individualized Issues and SSC's Administrative Exemption Defense do not
            Preclude Conditional Certification**

4

5      SSC argues that it plans to assert defenses based on the administrative exemption,

6  specifically as it relates to the group of employees with the title of "Remote Case Manager."  SSC

7  maintains that the exemption requires an individualized inquiry which will not be applicable to the

8  entire putative class who worked in different positions.  (Doc. 51, p. 21-22.)

9      The individualized nature of the administrative exemption defense does not undermine

10  whether the putative class may be certified for notice.  This argument has been raised numerous

11  times by defendants who argue that the individualized nature of the determining the applicability of

12  the exemption precludes notice certification, but it has been routinely rejected by district courts as

13  a basis to deny conditional class certification.  *See, e.g., Santiago*, 2011 WL 6372348, at *6

14  (collecting cases holding that arguments that exemption defenses require individualized inquiry go

15  to the merits and are better addressed after discovery has closed in a motion to decertify the class or

16  motion for summary judgment).

17      Notably, the case SSC cites for this proposition is *Pfohl v. Farmers Ins. Group*, No. 03-3080,

18  2004 WL 554834, at *9 (C.D. Cal. Mar. 1, 2004), which decertified a class based on whether each

19  plaintiff met the administrative exemption because it necessitated individualized inquiries.  The

20  order in *Pfohl* was a second-stage decision made on a complete record after discovery had concluded.

21  As such, *Pfohl*  provides no persuasive basis to find that these issues preclude notice certification

22  at the first stage.  It may well be that individualized issues and proof will preclude class treatment,

23  but that is better left to the second-stage where a merits-based decision can be made on a complete

24  record.  *See Aguayo*, 2005 WL 243677, at *5-8 (motor carrier exemption defense did not preclude

25  class certification at notice stage because exemption was a merits-based defense on which defendant

26  bore the burden and could raise at the second stage).

27      The same is true of SSC's arguments related to each plaintiff's statute of limitations and

28  employment periods; these issues are more appropriately considered at the second stage on a

complete record.  Issues regarding statute of limitations and employment periods are largely related to individual calculations of damages, not to whether there is a similar theory of liability.  These individualized issues do not preclude notice certification at the first stage.  *See Graham v. Overland Solutions, Inc.*, No. 10-cv-672-SEN (BLM), 2011 WL 1769737, at *2-3 (S.D. Cal. May 9, 2011) (disparate factual settings of the individual plaintiffs better resolved at the stricter second-stage on a complete record).  SSC will have an opportunity to raise all of these arguments again at the second stage of the FLSA class certification process.

### 11.   Conclusion

At this stage of the proceedings, Plaintiff has made a sufficient prima facie showing that she and the putative class are similarly situated.  *See Hill v. R ??L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010) ("All that needs to be shown by the plaintiff [at the first stage] is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." (quoting *Wertheim v. Arizona*, No. CIV 92-453 PHX RCB, 1993 WL 603552, at * 1 (D. Ariz. Sept. 30, 1993))).  After thorough consideration of the parties' briefs and all supporting evidence, the Court recommends that the following class be conditionally certified:

> All current and former SSC employees, who at any time between December 20, 2007, and present worked in the "Medicare Outreach" sub-division performing client/member outreach duties, who worked overtime, but were classified as exempt, excluding anyone who worked exclusively as a President, Vice President, Director, Supervisor, Team Lead, or Case Reviewer.

### E.   Form and Content of the Notice

In its original opposition, SSC asserted that to the extent the Court grants notice to Plaintiff's proposed class, the parties should be "afforded the opportunity to meet and confer on the specifics of the notice."  (Doc. 51, p. 25.)  Specifically, SSC notes that the parties have no agreement as to what steps Plaintiff will take to maintain the confidentiality of the putative class members' contact information.  Additionally, SSC asserts that the notice is neither accurate nor informative in the following ways:

> Page one of the proposed notice indicates that the claims involve meal and rest break periods and itemized statements, as opposed to the "exempt" status classification issue.

> Similarly, page one informs putative members they can make claims for "penalties," in addition to "overtime compensation for all overtime hours worked, liquidated damages" and "reasonable attorneys' fees, costs and expenses."
>
> The proposed notice and consent form fail to provide a deadline for opting into the lawsuit.

(Doc. 51, p. 26.)

Finally, SSC argues that, although Plaintiff has altered her proposed class definition in her supplement, Plaintiff has failed to make the corresponding changes to her proposed notice.  (Doc. 71, p. 6.)  Thus, the proposed class notice still addresses the notice to "All Intake/Outreach Employees . . . from December 20, 2007." (Doc. 71, p. 6.)

In Plaintiff's original reply brief, she asserted that SSC's concerns are "largely inappropriate attempts to limit participation by potential plaintiffs and to hinder plaintiffs' counsel's efforts to investigate the case on behalf of Ms. Davis." (Doc. 59, 17:1-3.)  Plaintiff objected to any limitations on her ability to contact recipients of the notice as an unlawful prior restraint on First Amendment rights, and because it would otherwise interfere with Plaintiff's efforts to properly investigate her case.  Further, Plaintiff asserted that the 30-day notice period suggested by Defendant was too short.  (Doc. 59, 17:12-13.)  As it pertains to Plaintiff's supplemental motion and the attached notice, Plaintiff argues that SSC raises only three concerns that can be easily addressed.  Plaintiff asserts that the protective order[10] already in place in this litigation addresses SSC's confidentiality concerns.  (Doc. 72, 6:12-14.)  Second, the notice period of 90-days requested by Plaintiff is appropriate.  Finally, any difference between the class as defined in the supplemental motion and the proposed notice is irrelevant because "only people fitting within the approved definition will ever get the notice in the first place." (Doc. 72, 7:3-4.)

## 1.     Temporal Scope of the Notice Period

District courts have broad discretion in establishing and modifying cutoff dates for the filing of consent forms.  *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989).  While SSC asserts that the notice period should be limited to 30 days, several courts have found that 30-day

---

[10] There is no court ordered protective order, but it does appear that the parties have a private confidentiality agreement.

deadlines are simply too short. *See, e.g., Baden-Winterwood v. Life Time Fitness*, 2006 WL 2225825 (S.D. Ohio Aug. 2, 2006) (rejecting defendant's proposed 30-day deadline as too short, plaintiff's 60-day deadline as too long, and setting a 45-day notice period); *see also Adams v. Inter-Con Sec. Sys., Inc.* 242 F.R.D. 530, 540 (N.D. Cal. 2007) (rejecting 30-day deadline as too short and 120-day deadline as too long, and setting 90-day notice period).  On the other hand, 90 days is a longer notice period than appears necessary.  Thus, the Court recommends that a 60-day notice period be set. *See Stanfield v. First NLC Fin. Servs.*, 2006 WL 3190527 (N.D. Cal. Nov. 1, 2006) (setting 60-day notice period.[11]

### 2.    Communications with Putative Class Members During Pendency of Notice

Defendant asserts that, to the extent notice is issued, Plaintiff's counsel should be instructed and limited with respect to the putative class members as follows:

1.    Use the contact information for the limited purpose of Court-facilitated notice to the putative plaintiffs until the notice period ends, and for no other purpose;

2.    Send to the putative plaintiffs, one time, by first class mail, return receipt not required, only the Court-approved notice, and no other type of notice or consent forms.  [citation omitted];

3.    Not, during the notice period, send reminders or follow-up notices to or initiate contact with the putative plaintiffs in any way other than the one-time mailing of the Court-approved notification package;

4.    Not hold any press conferences, issue press releases, or otherwise attempt to indirectly contact the putative plaintiffs, which would include removing any webpage references to this case until the notice period expires; and

5.    Return to SSC and no longer use for any purpose all contact information of persons that have not opted into the lawsuit.  Such information may later be subject to production in discovery upon a proper showing of relevance.

(Doc. 51, p. 25-26.)  There is little authority that addresses communication with the putative class during the pendency of the notice period, as opposed to communication prior to the grant of

---

[11] SSC asserts in a footnote in its opposition that a 30-day notice period is "more than reasonable considering that plaintiff has already been contacting potential class members by phone." (Doc. 51, p. 26 n. 6.) However, the contact to which SSC refers was Plaintiff's counsel's contact with putative class member Kedelim Coss, who filed a declaration stating that Plaintiff's counsel had contacted her to discuss her experiences at SSC, but she was never asked to join the lawsuit, file a lawsuit, or become a plaintiff against SSC.  (Doc. 59-2, ¶ 5.)  There is no evidence of impropriety on the part of Plaintiff's counsel with respect to communications with the putative class, and this does not constitute a convincing reason to limit the notice period.

conditional certification or after the notice period expires. While a blanket prior restraint on communications with the putative class has the potential to be overly restrictive, *see Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-04 (1981), the court has a duty to oversee the notice process; unfettered communications with the putative class during the notice period and without the benefit of judicial supervision is inappropriate. This issue was addressed by Judge Bissoon in *Taylor v. Pittsburgh Mercy Health System, Inc.* in the context of a motion for a blanket protective order following the court's order granting notice to a conditional FLSA collective class:

> [In light of] the relatively considerable latitude afforded to [the p]laintiffs, . . . the Court [finds] it appropriate for their counsel to identify any contemplated additional mailings before they are sent . . . [T]he undersigned generally agrees [with those decisions holding] that the court-controlled mechanism should trump . . . attorney driven modes of communication after conditional certification [is granted]. Given the uncertainties that lie ahead, Plaintiffs' counsel understandably will not voluntarily cede the possibility of additional mailings given their duty to zealously represent the legal interests of the putative collective action.
>
> Nevertheless, the undersigned remains convinced that transparency is essential to the Court's fulfillment of its duty . . . to exercise control over [this collective] action and to enter appropriate orders governing the conduct of counsel and [the] parties. Absent Court supervision, [the p]laintiffs' issuance of further mailings may well present a situation in which it is difficult, if not impossible, to 'unscramble the egg.'

No. 2:09-cv-003770CB, 2009 WL 2762531, at *4 (W.D. Pa. Aug. 25, 2009).

The court ordered that if the plaintiffs determined that the issuance of additional mailings beyond the court-approved notice was necessary, their counsel was to advise opposing counsel, provide a copy of the proposed mailing to opposing counsel and the court, and call opposing counsel and the court's chambers to schedule a telephone conference so that the court could promptly consider the plaintiffs' proposed course of action. *Id.* As it pertains to further written notices to the putative class beyond a court-ordered notice, the approach taken by the court in *Taylor* is reasonable and should be adopted here.

Plaintiff's counsel should not be permitted to initiate communication *during the notice period* for purposes of solicitation. Notwithstanding this prohibition, Plaintiff's counsel should be permitted to communicate with putative class members, particularly where the communication is initiated by a putative class member. For example, the proposed notice provides a telephone and email contact information for Plaintiff's counsel and informs class members that further information about the

lawsuit may be obtained by contacting Plaintiff's counsel.  Such communication should not be prohibited.

Finally, with regard to the contact information of putative class members who do not opt into the suit, that information shall be subject to the terms of the parties' stipulated confidentiality agreement (Doc. 39), and shall not be used by Plaintiff's counsel to contact potential plaintiffs to solicit their participation in the collective action.

**3.    Content of the Notice**

SSC also presents several arguments regarding the content of the notice which Plaintiff did not address in her reply papers.

**a.    The Nature of Relief Sought in the SAC**

SSC argues that Plaintiff's proposed notice is inaccurate because it "informs putative members they can make claims for 'penalties.'" (Doc. 51, p. 26.)  However, the SAC seeks an award of penalties as to all claims.  (Doc. 27, p. 32.)  Whether or not penalties are available as a matter of law is a separate issue that has not yet been decided.  To be precise, however, the notice should be amended to state that "Plaintiff seeks payment of overtime compensation for all overtime hours worked, liquidated damages, declaratory and injunctive relief, penalties **to the extent permitted by law**, an award of reasonable attorneys' fees, costs and expenses, and such other relief as the Court may deem proper." (Doc. 69-1, p. 39.)  This is an accurate statement of relief sought in the Second Amended Complaint.  (Doc. 27, p. 32.)

**b.    The Scope of the Claims of the Collective Class**

SSC's argues that the notice is inaccurate because it states that the claims involve meal and rest break periods and itemized statements, as opposed to the "exempt" status classification at issue. (Doc. 51, p. 26.)  In this regard, the proposed notice is not inaccurate or misleading.  The SAC contains a claim by Plaintiff and the collective class for SSC's purported failure to pay overtime compensation, which includes the following allegations:

> 49.    As an additional result of the misclassification, upon information and belief, [SSC] failed to comply with applicable record keeping requirements detailed in 29 C.F.R. [§] 516.
>
> . . .

55.  At all relevant times, [SSC] failed to pay Mrs. Davis, and other members of the [collective class], regular compensation for the hours they have worked, performing duties primarily for the benefit of the employer during meal periods.

. . .

60.  Mrs. Davis, therefore, demands that she and the other members of the [collective class] be paid minimum wages as required by the FLSA for every hour worked in any work week for which they were not compensated, overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, including wages for every hour worked primarily for the benefit of [SSC] during meal breaks, remaining on call and driving to locations for which they were not compensated.

(Doc. 27, ¶¶ 49, 55, 60.)  Whether or not Plaintiff or the collective class is entitled to relief for missed meal or rest breaks and for SSC's alleged inaccurate record keeping is not relevant.  The proposed notice is not inaccurate for informing the putative class what is pled in the SAC.

### c.      Reference to "Intake/Outreach Employees" Should be Omitted

Plaintiff's proposed notice states that the class "includes all individuals who were employed by SSC in the United States as Intake/Outreach Employees from December 20, 2007[,] to present."  (Doc. 69-1, p. 40.)  However, "Intake/Outreach Employees" is not part of the class definition.  The proposed notice should be amended to state that the class "includes all individuals who were employed by SSC in the United States in SSC's Medicare-Outreach sub-division from December 20, 2007, to the present."

### d.      The Location of the United States District Court for the Eastern District of California, Fresno Division

Plaintiff's proposed notice references the "United States District Court for the Eastern District of California in San Diego, California."  (Doc. 69-1, p. 39.)  It also directs employees that Consent to Join forms must be received by Plaintiff's counsel "so that it may be filed with the Clerk of the Federal Court in San Diego, California . . . . "  (Doc. 69-1, p. 41.)  Plaintiff's proposed notice should either remove "San Diego, California" as the location of the Eastern District or be modified to reflect the correct location of this division of the Court, i.e., Fresno, California.

## V.    CONCLUSION AND RECOMMENDATION

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for conditional class certification be GRANTED;

2.      SSC should be ordered to provide Plaintiff's counsel with contact information for the putative class members;

3.      Plaintiff's request to notify the putative class members via U.S. mail should be GRANTED IN PART with the amendments noted above;

4.      Putative class members should have sixty (60) days from circulation of the notice of pendency in which to opt in to this action; and

5.      Plaintiff's counsel should be appointed to represent the collective class members.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.   Findings and Recommendations were issued on August 28, 2012, and were withdrawn on September 18, 2012. Most of the issues discussed in this order were presented in those Findings and Recommendations; thus, a shortened objection period is warranted.   Within **SEVEN** (7) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.   Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Responses to objections shall be filed, and served on all parties, within **SEVEN** (7) days after service of the objections.   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.   *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **October 30, 2012**                              **/s/ Sheila K. Oberto**
                                                                    UNITED STATES MAGISTRATE JUDGE