# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA DAVIS, | Case No. 1:10-cv-02372-LJO-SKO |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION TO CHANGE VENUE** |
| v. | (Doc. 121) |
| SOCIAL SERVICE COORDINATORS, INC., et al., | |
| Defendants. | |
| _____/ | |

## I. INTRODUCTION

On June 20, 2013, Defendant Social Service Coordinators, LLC ("SSC") filed a motion to change venue, or in the alternative, a motion to dismiss of the basis of forum non conveniens. (Doc. 121.) The motion was set to be heard on July 18, 2013, before U.S. District Judge Lawrence J. O'Neill, but was reset before the undersigned and set for hearing on July 31, 2013. (Doc. 122.) On July 17, 2013, Plaintiff Lisa Davis ("Davis") filed an opposition to SSC's motion, and on July 23, 2013, SSC filed a reply brief. On July 30, 2013, the Court determined that the matter was suitable for decision without oral argument pursuant to the U.S. District Court for the Eastern District's Local Rule 230(g), and the July 31, 2013, hearing was vacated. For the reasons set forth below, SSC's motion to change venue is GRANTED. SSC's motion to dismiss on the basis of forum non conveniens is DENIED as MOOT.

## II. BACKGROUND

On December 20, 2010, Davis filed a complaint as an individual and on behalf of those similarly situated current and former employees of Social Services Coordinators, Inc. and Social Services Coordinators, LLC, (collectively "SSC").[1] On August 11, 2011, Davis filed a Second Amended Complaint ("SAC"), which is the operative pleading. (Doc. 37.) According to the SAC, Plaintiff worked for SSC as a remote case manager from August 23, 2010, until her employment was terminated on November 25, 2010. (Doc. 6.) Plaintiff contends that she, as well as other employees of SSC, were denied overtime pay and benefits, and were improperly classified as "exempt" in violation of the Fair Labor Standards Act ("FLSA").

Aside from the FLSA claims asserted on behalf of the class, Plaintiff individually alleges wage and hour claims under California law. Plaintiff's individual claims include: (1) Failure to pay compensation in violation of 29 U.S.C. § 201, *et seq.*; (2) Unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) Failure to pay overtime compensation in violation of Cal. Lab. Code § 510, *et seq.*; (4) Failure to provide accurate itemized statements in violation of Cal. Lab. Code § 226; (5) Failure to provide indemnification of expenditures in violation of Cal. Lab. Code § 2802; and (6) Failure to provide meal and rest breaks in violation of Cal. Lab. Code §§ 226.7 and 512.

In April 2012, Plaintiff filed a motion to conditionally certify an FLSA class, which was granted. The following class has been conditionally certified:

> All current and former SSC employees, who at any time between December 20, 2007, and present worked in the "Medicare Outreach" sub-division performing client/member outreach duties, who worked overtime, but were classified as exempt, excluding anyone who worked exclusively as President, Vice President, Director, Supervisor, Team Lead, or Case Reviewer.

(Doc. 78, 4:4-6.) During the class notice period, seventy-four (74) additional plaintiffs ("opt-in

---

[1] Social Service Coordinators, LLC was originally Social Service Coordinators, Inc. However, SSC changed corporate forms on December 28, 2010. (SAC, Doc. 27, ¶ 8.) Thus, references to "SSC" encompass both Social Service Coordinators, LLC and Social Service Coordinators, Inc.

plaintiffs") consented to join the suit.  (Docs. 80-84, 88, 90, 93, 95, 100-102, 104, 105, 107, 110-12, 114-117.)  The notice and opt-in period closed on March 29, 2013.

On April 10, 2013, the Court issued a scheduling order opening merits-based discovery until October 11, 2013, setting a dispositive motion filing deadline of January 16, 2014, and setting trial for May 20, 2014.  (Doc. 119.)

On June 20, 2013, SSC filed a motion to change venue, or in the alternative, a motion to dismiss for forum non conveniens.  (Doc. 121.)  It is this motion that is currently pending before the Court.

### III. DISCUSSION

**A.  Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404.  In considering a motion to change venue, courts first consider whether subject matter jurisdiction, personal jurisdiction, and venue are proper in the transferee district.  If jurisdiction and venue are proper in the transferee district, courts then consider whether convenience of the witnesses and parties and the interests of justice favor transfer.

The Ninth Circuit applies a balancing test to determine whether to transfer a case under Section 1404.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  In analyzing the third factor, the "interests of justice," a number of relevant factors are considered, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones,* 211 F.3d at 498-99; *see also Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).  "Other factors that can be considered include[] (1) the enforceability of the judgment; (2) the relative court congestion in the two forums; and (3) which forum would

3

better serve judicial economy." *Szegedy v. Keystone Food Prods., Inc.*, No. CV 08-5369 CAS (FFMx), 2009 WL 2767683 (C.D. Cal. Aug. 26, 2009).

A motion to transfer venue should be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (citing *World-Wide Volkswagon v. Woodson*, 444 U.S. 286, 297 (1980)). The purpose of Section 1404(a) is to "prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted). The party seeking to transfer venue bears the burden of showing that convenience and justice require transfer. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 278-79 (9th Cir. 1979); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). Consideration of a motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *See Jones*, 211 F.3d at 498.

**B.     This Action Could have been Brought in the Southern District of Florida**

Transfer of venue under 28 U.S.C. § 1404(a) is only appropriate if the action could have been brought in the transferee venue. 28 U.S.C. § 1404(a). Davis concedes that this suit could have been brought in the Southern District of Florida.[2] Davis asserts claims under the FLSA, invoking the Court's federal-question subject matter jurisdiction. SSC is a Florida corporation with its principal place of business in the Southern District of Florida. Therefore, SSC is subject to personal jurisdiction in Florida and venue in the Southern District of Florida is proper under 28 U.S.C. § 1391(b), (c). As this action could have been brought in the Southern District of Florida, the Court proceeds to weigh the factors relevant to the convenience of the parties and the interests of justice to determine whether transfer is proper.

---

[2] Plaintiff correctly notes that this issue was not addressed by SSC in its brief.

**C.     Convenience of Witnesses and the Parties**

     **1.     Convenience of Witnesses**

SSC claims that any third-party witnesses would be highly inconvenienced by appearing in a California court because it would require "extensive travel," "up-front personal expenditures and a prolonged period away from home." (Doc. 121-1, p. 8, n. 3.)

Davis asserts that SSC has failed to identify any particular witnesses it plans to call at trial, the substance of their testimony, or where they are located. As such, Davis maintains that SSC has failed to establish that the convenience of any witnesses favors transfer. Davis also asserts that any third-party witness she calls to testify regarding her work schedule "would naturally be located within this District, near Mrs. Davis' remote worksite."

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005) (quoting *State Capital Corp. v. Dente*, 855 F. Supp. 192, 197 (S.D. Tex. 1994)). Notably, "[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Id.* (quoting *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)). In considering how to weigh this factor, courts must assess not simply how many witnesses each side has and their respective locations, but also the importance of the witnesses. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) (considering common law forum non conveniens dismissal and concluding district court improperly focused on the number of witnesses in each location, and should have examined the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility and convenience to the forum).

Davis' contention regarding the inconvenience of transfer to any third-party witnesses she may call, suffers from the same lack of specificity as SSC's contention that unidentified witnesses will be inconvenienced if the suit remains in this District. Both parties fail to specifically identify any third-party witnesses they may seek to depose or call at trial, the nature of the witnesses' testimony, and the materiality of that testimony to the issues in the case. While SSC provides the declaration of Cristina Pinckney that states most individuals that will likely be needed as witnesses

reside within the jurisdiction of the Southern District of Florida (Doc. 121-3, ¶5), there is no information regarding whether any of these witnesses is a third-party witness or a party witness, the identity or location of the witness, and the nature of that witness's testimony.

Other than presuming – given the issues in the case – that most of the third-party witnesses the parties may wish to call are former employees of SSC who likely reside in Florida, and that majority of the party witnesses reside in Florida, the Court has insufficient information necessary to assess this factor. Therefore, the Court concludes that this factor is neutral, weighing neither in favor of nor against transfer. *See Hawkins v. Gerber Prods. Co.*, __ F. Supp. 2d __, 2013 WL 627066, at * 4 (S.D. Cal. 2013) ("Defendants have not identified any potential witnesses by name or described their testimony. While the Court agrees the majority of witnesses are located in New Jersey, Defendants fail to specifically name or describe their testimony. These components appear to offset, and the Court finds this factor is neutral.").

### 2.     **Convenience of the Parties**

SSC emphasizes that convenience of both parties and party witnesses favors transfer to the Southern District of Florida. SSC notes that (1) its corporate headquarters are located in the Southern District of Florida, (2) 57 of 75 of the plaintiffs reside within the Southern District of Florida, (3) 62 of the 75 plaintiffs currently work or have worked out of SSC's corporate headquarters within the Southern District of Florida; (4) most of SSC's current and former management employees and supervisors with knowledge of the case reside and/or work (or have worked) within the Southern District of Florida; (5) all SSC's personnel documents and records are located in the Southern District of Florida; and (6) SSC's databases and servers are located within the Southern District of Florida. (Doc. 121-1, p. 3; Doc. 121-3, Pinckney Decl, ¶¶ 3-11.)[3]  SSC further notes that the *only* contact with the Eastern District of California is through Davis, who worked for SSC remotely from her home in this venue. As 60 of the 75 plaintiffs reside in Florida, 7 reside in New York, 2 reside in Texas, 1 resides in Kentucky, 1 resides in Arizona, 1 resides in North Carolina, and 3 reside in California – and of those, only Davis lives in the Eastern

---

[3] While Cristina Pinckney's declaration submitted by SSC regarding the residence of the plaintiffs relates to the time that these individuals worked for SSC, Davis does not dispute the residence of any opt-in plaintiff as set forth by SSC.

6

1  District of California, the travel costs of these plaintiffs to appear at trial would be significantly
2  lessened by transferring the venue to the Southern District of Florida.[4]

3  Davis asserts that SSC has been acquired by Altegra Health, Inc. ("Altegra") and operates
4  as Altegra's subsidiary.  Davis notes that Altegra lists SSC's Miami Lakes, Florida, facility as its
5  East Coast[5] recruiting center, and Altegra has published statements from employees who worked
6  for SSC but now work for Altegra, which indicates that the companies are one in the same.  (Doc.
7  123, 9:19, n.2.)  Davis contends that the plaintiffs are located throughout the nation, and the
8  parties will therefore be inconvenienced no matter what venue is chosen.  (Doc. 123, 10:2-3.)
9  Davis maintains that, because of this, convenience of the parties is a neutral factor that does not
10 weigh in favor or against transfer.

11 In its reply, SSC argues that, although it was acquired by its current parent company
12 Altegra on January 3, 2011, SSC has remained a separate corporate entity and the location of
13 Altegra's offices is irrelevant to consideration of the most convenient venue.  Moreover, given that
14 72 out of 75 plaintiffs would have to travel out of state to California for trial, while only
15 approximately 15 of 75 plaintiffs would have to travel out of state for trial in Florida, the litigation
16 costs would decrease substantially upon transfer, and the parties would "enjoy an increased ease of
17 access to the relevant documents and individuals located at SSC headquarters" in Florida.  (Doc.
18 124, p. 8.)

19 On balance, while the plaintiffs would be required to associate local counsel in Florida, the
20 fact that 57 of the plaintiffs currently reside in the Southern District of Florida indicates that
21 Florida would be a more convenient forum for them, particularly for purposes of appearance at
22 trial.  Additionally, any SSC employee party witnesses the parties wish to call at trial will not be
23 required to travel to California and will therefore not suffer prolonged case-related absences from
24 their work, resulting in expense to SSC.  Although Davis notes that the parties have been able to

---

[4] Some of the plaintiffs resided in multiple states during their employment.  SSC claims that 57 currently reside within the Southern District of Florida, and Davis does not dispute this.  (Doc. 121-1, p. 3.)

[5] Davis' opposition brief states that Altegra's "West Coast Recruiting center is exactly the same as SSC's headquarters and primary place of business."  SSC notes that Altegra's *East* Coast Recruiting center is the same as SSC's headquarters and primary place of business, and that Davis' opposition brief contains a contradiction in this regard.

7

1 make telephonic appearances in the Eastern District of California, which reduces the need for the
2 parties to travel to the forum for court appearances, there is no evidence that the parties would be
3 unable to make telephonic appearances in the Southern District of Florida for various pre-trial
4 hearings.  For purposes of trial appearances, even the plaintiffs' counsel resides out of the Eastern
5 District of California and will be required to travel regardless of the forum, thus a change in venue
6 does not create additional cost to plaintiffs in connection with their counsel's travel.  The benefit to
7 both parties in terms of convenience and the cost of trial favors transfer.  Moreover, because the
8 transfer will likely result in cost savings to both sides, the costs are not merely shifted from SSC
9 onto the plaintiffs.

10 Finally, the stark reality of the district judges' caseloads in the Fresno division of the
11 Eastern District, currently in excess of 1,300 cases per judge, means that this trial may trail any
12 criminal case or older civil case that take precedence – which will only compound the costs to the
13 parties of a trial in this district.[6]  While SSC notes the parties have been informed of this trailing
14 possibility, it has not presented any congestion statistics with regard to the Southern District of
15 Florida.  Nonetheless, the Court notes that the U.S. Courts Administrative Office reports that the
16 weighted filing per judgeship in the Eastern District of California for 2012 is 947 civil cases, and
17 176 criminal cases.  The Southern District of Florida has a weighted filing per judgeship of 507
18 civil cases, and 128 criminal cases.[7]  Judges in both districts are handling heavy weighted
19 caseloads, but the statistics reflect more docket congestion in this District.   Accordingly, a trial
20 may be speedier in the Southern District of Florida.  *See Gates*, 743 F.2d at 1337 (considering
21 forum non conveniens motion to dismiss, noting that relative docket conditions may be accorded
22 some, but not decisive, weight where trial in another court may be speedier because of its less
23 crowded docket).  The potential delay that may result from trial trailing has relevance to the
24 *convenience* of the parties' witnesses themselves who will be required to be on 24-hour standby for

---

[6] The parties were informed of the possibility that this case would trail any criminal trials that have precedence or older civil trials given Judge O'Neill's current caseload and trial calendar.  (Doc. 119, 2:2-19.)

[7] *See* http://www.uscourts.gov/Statistics/JudicialBusiness/2012/us-district-courts.aspx (weighted filings per authorized judgeship, by District for the twelve month period ending September 30, 2012).

8

trial during the trailing,[8] and well as to the *costs* delay will create for both sides. For these reasons, the convenience of the parties favors transfer to the Southern District of Florida.

**D. Interests of Justice**

In addition to the convenience of the parties and the witnesses, courts also consider whether the interests of justice favor a transfer. Under this third prong of the analysis, courts consider factors such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones,* 211 F.3d at 498-99; *see also Metz,* 674 F. Supp. 2d at 1145.

**1. Plaintiff's Choice of Forum is Entitled to Some Weight**

SSC asserts that Davis is the only plaintiff who resides in the Eastern District of California and that 62 of the 75 plaintiffs reside or have resided in Florida. SSC cites *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), for the proposition that, "[a]lthough great weight is generally accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." Since Davis is the only plaintiff that resides in the Eastern District of California, and more plaintiffs reside or have resided in Florida, SSC asserts this factor weighs in favor of transferring venue.

Davis contends that SSC must overcome a strong presumption in favor of her choice of forum. Although this case is conditionally certified as a collective action, Davis is the only named plaintiff and bears the responsibility for leading the action. Davis asserts her choice of forum is entitled to some weight despite the fact that other members of this action are from diverse locations, and thus this factor weighs against transfer.

---

[8] The parties were informed that, "[w]ithout the ability to definitively predict which cases will actually go to trial or precisely how long each will last, the Court cannot provide advance notice of which cases will trail or for how long. Once the trial date arrives, counsel, parties and witnesses must remain on 24-hour standby until a court is available." (Doc. 119, 2:9-12.)

9

SSC responds that Davis failed to cite authority that plaintiff's choice of forum should be given weight in the context of collective action cases. SSC reiterates that, because Davis is the only member of the class who resides and works in the Eastern District of California, her choice of forum should be given less weight.

In considering this factor, courts treat FLSA collective actions like other class action cases. *See Milton v. TruePosition, Inc.*, No C 08-3616 SI, 2009 WL 323036, at *2 (N.D. Cal. Feb. 9, 2009) (Plaintiff's choice of forum afforded "some deference" in FLSA collective action because it was not a case where the operative facts occurred outside the forum or that the forum had no interest in the parties or the subject matter); *see also Holliday v. Lifestyle Lift, Inc.*, No C 09-4995 RS, 2010 WL 3910143 (N.D. Cal. Oct. 5, 2010)  Therefore, while a plaintiff's choice of forum is accorded less weight in the class action context, "consideration must be given to the extent of both [the plaintiff's] and [the defendant's] contacts with the forum, including those relating to [the plaintiff's] cause of action . . . If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's choice is entitled to only minimal consideration." *Lou*, 834 F.2d at 739.

Although only Davis resides in the Eastern District of California, and only two other opt-in plaintiffs reside in California, it is Davis' employment in this District that led to this action. Moreover, five of Plaintiff's individual claims arise under California law. Therefore, not *all* the operative facts occurred outside the forum, nor is this a case where the forum has *no* interest in the parties or the subject matter. For this reason, the Court concludes that Davis' choice of forum is entitled to some weight, although it is not entitled to the deference it would receive were it not proceeding as an FLSA collective action. *See Johns v. Panera Bread Co.*, No. 08cv1071 SC, 2008 WL 2811827, *2 (N.D. Cal. July 21, 2008) (although the plaintiff resided in the district and her employment in the district led to the suit, the plaintiff's decision to seek to represent a nationwide class substantially undercut the deference afforded to the plaintiff's choice of forum).

**2.    Parties' Contact with the Forum and Related to this Action**

This factor focuses on the parties' contacts with either forum. *See Ahead, LLC v. KASC, Inc.*, No. C 13-0187 JLR, 2013 WL 1747765, at *11 (W.D. Wash. Apr. 23, 2013). As a class, the

10

plaintiffs have more case-related contacts with the Southern District of Florida than with the Eastern District of California. A majority of the opt-in plaintiffs lived in the Southern District of Florida and worked at or from SSC's Miami Lakes, Florida, office at some point during the relevant time period. *See Silver Valley Partners, LLC v. De Motte*, No. C 05-5590 RBL, 2006 WL 2711764, at *3 (W.D. Wash. Sept. 21, 2006) (transferring venue because "both parties have case-related contacts with the District of Idaho, and only plaintiffs have case-related contacts with the Western District of Washington"). In contrast, only three plaintiffs worked for SSC in California, and only Davis performed work in this District.

SSC has limited case-related contact with the Eastern District of California through its employment of Davis. SSC's case-related contacts with California generally are limited to the three plaintiffs who worked remotely for SSC from their homes in California. Although Davis asserts that SSC's parent company has its headquarters in Los Angeles, California, Davis has not supplied any authority indicating that a parent company's contacts with the forum state can be imputed to a subsidiary company such as SSC. Moreover, SSC was not acquired by Altegra until January 2011, which constitutes only part of the relevant period of this case. Any contacts by Altegra with California would not be case related, and do not represent contacts or a connection to the Eastern District of California in particular.

On balance, while SSC and Davis have case-related contacts with the Eastern District of California, the vast majority of the plaintiffs have contacts only to the Southern District of Florida. Not only did these plaintiffs live in Florida, but they worked for SSC in the Southern District of Florida. Further, SSC is a Florida corporation, and all of its management decisions were made in the Southern District of Florida. While some of the effects of these decisions were borne out in the Eastern District of California through Davis' employment, the majority of the effects of these decisions would naturally have been felt in Florida where the largest number of class members lived and worked. The parties' contacts with the respective forums weigh in favor of transfer.

### 3. Differences in the Costs of Litigation in the Two Forums

SSC maintains that all the plaintiffs would be required to travel to the Eastern District of California to be deposed, and possibly to testify at trial. The majority of the 75 plaintiffs live in

11

Florida, and would be required to travel to California.  SSC contends that the costs of conducting these depositions would be lessened for both parties if the litigation were transferred to Florida.

The depositions of the plaintiffs would not necessarily need to be conducted in this district. Generally, noticing parties have discretion to set depositions at the location of the noticing party's choosing. *Phila. Indem. Ins. v. Fed. Ins. Co.*, 215 F.R.D. 492, 495 (E.D. Pa. 2003) ("Usually, a party seeking discovery may set the place where the deposition will take place, subject to the power of the courts to grant a protective order designating a different location.").  However, courts presume that a party's deposition will proceed at his or her place of residence, business, or employment:

> Although the federal rules do not prevent plaintiff[ from] designating any place he chooses for the taking of a defendant's deposition, the cases indicate that it is presumed that a defendant will be examined at his residence or at his place of business or employment; if another place is named and defendant files a timely objection the objection should be sustained absent some unusual circumstances to justify putting the defendant to such inconvenience.

*Grey v. Continental Marketing Assocs.*, 315 F. Supp. 826, 832 (N.D. Ga. 1970). If the parties are unable to resolve a dispute regarding the location of a deposition, a protective order may be obtained.  Fed. R. Civ. P. 26(c).  "The Court has considerable discretion in determining the place of a deposition, may consider the relative expenses of the parties and may order that expenses be paid by the opposing part." *Generale Bank Nederland N.V. v. First Sterling Bank*, No. Civ. A 97-2273, 1997 WL 778861, at *2 (E.D. Pa. Dec. 18, 1997).  As such, SSC's assertion that depositions must generally occur where the action is venued is incorrect.  Further, to the extent that SSC insists on deposing a Florida plaintiff in California, the plaintiff could seek a protective order from the court.  Thus, there is no definitive costs savings to be realized with respect to depositions of party witnesses upon transfer.

Cost savings as it relates to trial, however, favor a transfer. The vast majority of the opt-in plaintiffs would have to travel out of state to provide testimony for purposes of trial in the Eastern District, whereas only 15 plaintiffs of 75 would be required to travel out of state to the Southern

District of Florida.⁹  Additionally, SSC would also realize cost savings as its employee party witnesses are located in Florida, and would incur significant travel expense to appear in California for trial.  Because both parties will realize cost savings, transferring venue does not simply result in shifting the costs from SSC to Davis.  Rather, the cost of the litigation will decrease for both sides.  *See Italian Colors Res. v. Am. Express Co.*, No. C. 03-3719, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) ("Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions.").  Although Davis notes that she will be forced to associate local counsel in Florida, this cost will be outweighed by potential trial cost savings.

Further, as discussed above, if this case remains in this district and the trial is trailed, costs to both sides will dramatically increase.  The Court finds that the costs of each side will likely decrease if the matter is transferred, and this factor weighs in favor of transfer.

### 4. Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

The availability of compulsory process only favors transfer if Florida has the ability to subpoena more non-party witnesses than California.  Neither SSC nor Davis specifically identifies any third-party witnesses, although Plaintiff notes that any witness giving testimony about her work schedule would necessarily be located in California.  Given a lack of information as to the specific identities of third-party witnesses, their location, the materiality of their anticipated testimony, the Court has insufficient information to assess this factor.  Thus, this factor weighs neither for nor against transfer.

### 5. Ease of Access to Sources of Proof

This factor is not a predominant concern in deciding venue as "advances in technology have made it easy for documents to be transferred to different locations." *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009).  Nevertheless, most of the

---

⁹ It is not clear how many plaintiffs are expected to testify at trial, but Davis does not assert that only a few of the plaintiffs are expected to testify at trial.

13

document evidence in this case will revolve around SSC's corporate and employment records, located at SSC's corporate headquarters in Florida. To the extent that documentary evidence may not be available in electronic format, this factor favors transferring the action to the Southern District of Florida. Further, party-employee testimony related to SSC's employment and corporate records will be easiest to obtain or present in the Southern District of Florida. As the majority of the class appears to reside in Florida, testimony of these plaintiffs will also be easier to obtain and present in the Southern District of Florida rather than California.

Finally, as noted in *Johns*, 2008 WL 2811827, at *5, although access to electronic documents diminished the importance of the ease of access factor, the court was mindful that "litigation should proceed where the case finds its center of gravity." (quoting *Hoefer v. U.S. Dep't of Commerce*, No. C 00 0918 VRW, 2000 WL 890862, at *3 (N.D. Cal. June 28, 2000)). Here, SSC's corporate headquarters are in the Southern District of Florida, its employment and policy decisions were formulated at its headquarters, and a majority of the opt-in plaintiffs worked for SSC at its Miami Lakes facility in the Southern District of Florida. The nucleus of this case lies in the Southern District of Florida. For these reasons, the Court finds that this factor slightly favors transfer to the Southern District of Florida.

### 6. State Most Familiar with the Governing Law

Davis alleges claims under the FLSA on behalf of herself and the class; Davis also asserts several individual claims pursuant to California law. A California district court is more familiar with California law than a district court in another state. Nevertheless, courts in all states are fully capable of applying another state's substantive law. *Strigliabotti v. Franklin Res., Inc.*, C 04-0883 SI, 2004 WL 2254556 (N.D. Cal. Oct. 5, 2004). In *Shultz v. Hyatt Vacation Mktg. Corp.*, 10-CV-04568-LHK, 2011 WL 768735 (N.D. Cal. Feb. 28, 2011), the court found that the presence of California class claims weighed only slightly against transfer to the Middle District of Florida. Like *Shultz*, this Court finds the existence of Davis' individual California claims weighs only slightly against transfer. *See Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007) (noting that "where a federal court's jurisdiction is based on the existence of a federal question, as it is here, one forum's familiarity with supplemental state

law claims should not override other factors favoring a different forum").

**7.     Local Interest in the Controversy**

While California has an interest in protecting its residents from wrongful employment practices, an equally persuasive argument exists that Florida courts have an interest in preventing wrongful employment practices by companies that conduct business in Florida. Moreover, because a majority of the opt-in plaintiffs reside in Florida, Florida has the same degree of interest as California in protecting its citizens from wrongful employment practices. The primary thrust of this action involves the employment practices of a Florida corporation, and the majority of the class resides in, and worked for SSC, in Florida. As such, this factor tips in favor of transfer to the Southern District of Florida.

**8.     Pendency of the Proceedings**

Davis asserts that the pendency of the proceedings weighs strongly against transfer. According to Davis, SSC waited two-and-a-half years before seeking to transfer the case, which is unreasonable and raises a presumption of injury. Davis notes that judicial resources will be conserved if the action is adjudicated in the Eastern District of California, which is familiar with the facts of the case. If transferred, the Southern District of Florida will take time to familiarize itself with the nuances of the case, and thereby delay the trial prejudicing Davis and the opt-in plaintiffs.

The duration of the pendency of the litigation prior to the motion to transfer is another factor to be considered by the Court. *Moore v. Telfon Communications Corp.*, 589 F.2d 959, 968 (9th Cir. 1978). The delay weighs against the transfer if it is substantial and the case may be nearing its conclusion. *See id.*

A transfer will likely not result in significant delay or prejudice. Although SSC's motion to transfer venue was not filed until after the class was conditionally certified, there is no evidence that SSC unreasonably delayed in filing the motion. The identities of all the opt-in plaintiffs were not known until April 2013; thus SSC has only recently been in a position to assess the location and residence of these plaintiffs. While Davis asserts that SSC has always known that the majority of its employees live in Florida, SSC has only recently become aware of which former or

15

current employees consented to join the suit. The Court does not find that SSC unreasonably delayed in filing the motion to transfer venue.

Additionally, although this Court has committed resources to SSC's motion to strike (Doc. 16) and Davis' conditional certification motion (Doc. 47), merits-based discovery was only recently opened and has not yet been completed, the dispositive motion deadline is set for January 16, 2014, and the trial is set for May 20, 2014. Given that there is still significant time before these deadlines expire, and transfer should not affect the *parties'* ability to meet these deadlines, the pendency of the proceedings does not weigh against transfer. *See Doornbos v. Pilot Travel Centers LLC,* No. 04-cv-00044 BEN (BLM), 2005 WL 6167730, at *4-5 (S.D. Cal. Aug. 16, 2005) (pendency of case did not weigh against transfer despite that the court had handled four substantive motions, including plaintiffs' motion to facilitate notice, defendants' motion to decertify the conditional FLSA class, plaintiff's motion for preliminary approval of class action settlement, and plaintiffs' application for final approval of settlement).

Some delay upon transfer is inevitable, but this case is not on the eve of trial nor is the deadline for dispositive motions imminent. The Court finds that the pendency of the case in the Eastern District of California does not weigh against transfer.

### 9.     Location of Relevant Agreements

SSC maintains that there are no employment agreements between SSC and the plaintiffs in this case; thus, this factor is neutral. Davis asserts that, while she was employed at-will, she received and executed an employment offer in Fresno, California, on August 5, 2010. Davis maintains that while this is "not a big factor here," it nonetheless tips in favor of venue in California. SSC responds that, even to the extent that there are employment agreements, the vast majority of these, given the composition of the plaintiffs, would have been negotiated and executed in Florida.

On balance, the Court finds this factor neither favors transfer nor weighs against it. The fact that an offer of employment was signed by Plaintiff in Fresno relates to the parties' case-related contacts in the forum. Any similar employment offers with other members of the class would have been executed outside the forum, and primarily in Florida.

16

In sum, the convenience of the parties, the parties' contacts with the respective forums and their contacts as related to this case, the costs of the litigation, the ease of access to proof, and Florida's local interest all favor – to some degree – transfer to the Southern District of Florida. Taken as a whole, these factors outweigh Davis' choice of forum and this Court's familiarity with California law, which will apply to Davis' individual claims. For these reasons, the Court finds that transfer to the Southern District of Florida is appropriate.

**E.     SSC's Motion To Dismiss on the Basis of Forum Non Conveniens is DENIED as MOOT**

As SSC's motion to transfer is granted, its motion to dismiss on the basis of forum non conveniens is moot. Moreover, the doctrine of forum non conveniens is inapplicable in any event. In federal court, "[t]he common law doctrine of forum non conveniens was partly displaced by the provisions of 28 U.S.C. § 1404(a), which requires transfer rather than dismissal if the case can be heard in a more convenient district or division within the United States; the common law doctrine remains applicable, however, when the action should have been brought abroad." *Nai-Choa v. Boeing Co.*, 555 F. Supp. 9, 12 (N.D. Cal. 1982). In *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007), the Supreme Court held that "[t]he common law doctrine of forum nonconveniens 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' and perhaps in rare instances where a state or territorial court serves litigational convenience best." *See also Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994) ("the federal doctrine of forum non conveniens has continuing application only in cases where the alternative forum is abroad").

///
///
///
///
///
///
///

17

### IV.   CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. SSC's motion to change venue is GRANTED;
2. SSC's alternative motion to dismiss on the basis of forum non conveniens is DENIED as MOOT; and
3. This case shall be TRANSFERRED to the U.S. District Court for the Southern District of Florida.

IT IS SO ORDERED.

Dated:   **August 16, 2013**                              **/s/ Sheila K. Oberto**
                                                          UNITED STATES MAGISTRATE JUDGE